**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EFFINGHAM DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CHELSEA LYNNE POTTER, | ) | Case No.: 19-60216 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| ************************************* | ) | |
| NANCY J. GARGULA, | ) | |
| United States Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No.: _____ |
| | ) | |
| DEIGHAN LAW LLC | ) | |
| f/k/a LAW SOLUTIONS CHICAGO LLC, | ) | |
| d/b/a UPRIGHT LAW LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ERIC JAMES HOMA, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

NOW COMES, NANCY J. GARGULA, the United States Trustee for Region 10 ("U.S. Trustee"), by Mark D. Skaggs, her attorney, and for her Complaint, states as follows:

**JURISDICTION AND VENUE**

1.    This is a complaint in which the U.S. Trustee is seeking compensatory and injunctive relief as well as the imposition of sanctions against Deighan Law LLC, formerly known as Law Solutions Chicago LLC, and doing business as UpRight Law LLC, ("UpRight Law") and Attorney Eric Homa, who provided legal services to the Chapter 7 Debtor Chelsea Lynne Potter ("Debtor") in case number 19-60216 now pending in the United States Bankruptcy Court for the Southern District of Illinois, Effingham Division.

2.    The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b) and

a general order of reference from the United States District Court for the Southern District of Illinois.

3.      This proceeding is both a constitutionally and statutorily core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) in that it asserts only claims arising directly under title 11 of the United States Code.   Nevertheless, to the extent any of these proceedings are non-core, the U.S. Trustee consents to the entry of a final judgment by the Bankruptcy Court in accordance with the local rules of this Court.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

### Parties

5.      Plaintiff is the duly appointed United States Trustee for Region 10, which includes the Southern District of Illinois.

6.      Plaintiff has standing and files this Complaint in her official capacity pursuant to 28 U.S.C. § 586(a) and 11 U.S.C. § 307.

7.      Defendant, UpRight Law is an Illinois limited liability company with its principal place of business in Chicago, Illinois.

8.      UpRight Law provided legal services to the Debtor in connection with the filing of a Chapter 7 bankruptcy case, docketed as case number 19-60216 (the "Bankruptcy Case").

9.      Defendant Eric James Homa, a member of the bar of this Court, purports to be a partner of UpRight Law ("Mr. Homa").   Mr. Homa executed and electronically filed the bankruptcy petition, schedules ("Schedules"), and the statement of financial affairs (the "Statement") in this case utilizing the Court's CM/ECF system.

10.     Robert T. Bruegge serves as the duly appointed Chapter 7 Trustee (the "Chapter 7 Trustee").

**Procedural History**

11.     Debtor filed her voluntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on June 18, 2019 (the "Petition").

12.     Mr. Homa signed Debtor's Petition on page 7 as counsel for Debtor.   Mr. Homa's signature block on the Petition attests that he was filing this case as an attorney of UpRight Law.

**Factual Allegations Relevant to All Counts**

*A.      The Structure and Business Model of UpRight Law*

13.     UpRight Law operates primarily from its main office in Chicago, Illinois.

14.     As of June 1, 2015, UpRight Law had three equity members, Kevin Chern, Jason Allen, and David Leibowitz (the "Equity Members").

15.     Between 2015 and his departure from UpRight Law in early 2019, Kevin Chern was the managing partner and the attorney who had supervisory responsibility over the company's attorney and non-attorney staff and local partners.

16.     UpRight Law asserts that Mr. Allen ceased his job functions in June 2018 and signed his separation papers on July 18, 2018, while   Mr. Chern officially resigned on February 19, 2019.

17.     Michael Deighan a/k/a Mike Deighan is now the majority equity member of UpRight Law, and in and around May of 2019, the firm changed its legal name to Deighan Law LLC. Following Mr. Chern's departure from UpRight Law, Mr. Deighan became and is now the managing partner and attorney who has supervisory authority over the company's attorney and non-attorney staff and local partners.   Online records for the State Bar of Michigan indicate that Mr. Deighan is licensed to practice in Michigan, while the online records of the Illinois Attorney Registration & Disciplinary Commission indicate that Mr. Deighan is not licensed to practice law in Illinois.

18.     UpRight     Law's     advertising,     including     its     website,     found     at
https://www.uprightlaw.com/, states that UpRight Law is a debt relief agency and that it "help[s]
people file for relief under the Bankruptcy Code."

19.     Prior to his departure from UpRight Law and Mike Deighan's succession as equity
owner and Managing Partner, UpRight Law's website named Mr. Chern as the attorney
responsible for the content of the site.   UpRight Law's website currently provides that "An
attorney responsible for the content of this site is Mike Deighan, Esq., licensed in Michigan with
an office at 79 West Monroe Street, 5th Floor, Chicago, Illinois 60603."   The website further
directs prospective assisted persons who view it to click a link to "To see the attorney in your area
who is responsible for this advertisement."

20.     Below statements such as "We bring the law office to the living room," "Do
you qualify for bankruptcy protection," "Get immediate access to legal help on your
terms," and "Have 10 minutes? Get your bankruptcy questions answered here," UpRight
Law's website advertises, among other things, that it provides a "free consultation" and
that:

> "At UpRight Law, every day we look for ways to *Make Clients Love Us* and to *Find
> a Better Way*! By providing immediate legal help to people with limited means,
> even when they cannot afford to pay for legal services today, we advance these
> values. When we say, "get started for free," we mean it. Every day, UpRight Law
> starts providing debt relief assistance to dozens of clients even before they have
> paid us any money. We do ask that they make a commitment to pay something by
> scheduling a future payment, but we are committed to providing assistance now
> and placing our clients' immediate need for help first."

Available at www.uprightlaw.com (last accessed September 7, 2020).

21.     UpRight Law's advertising asserts that it is committed to "Increasing Efficiency
delivering fair and just outcomes effectively, without waste or duplication."

22.     UpRight Law's website advertises that it can assist the Debtor in repairing a credit
score and represents that "we've partnered with experts in the credit rehabilitation business to offer

you the information and guidance you need. This valuable information, paired with our credit report auditing, will help set you on the path toward a future free from financial stress."

23.    UpRight Law commences cases in bankruptcy courts throughout the United States, including in this Court, through its affiliations with locally licensed attorneys.

24.    UpRight Law refers to its local attorneys (hereinafter, "Local Attorneys") as "limited partners" and/or "partner attorneys" based on the execution of a "Partnership Agreement."

25.    The Partnership Agreement provides for the division of fees between UpRight Law and the Local Attorney on a case by case basis based on the completion of certain tasks by the Local Attorney in a chapter 7 or a chapter 13 case.

26.    The Partnership Agreement also provides for the distribution of 1% of the profits generated in each jurisdiction to the Local Attorneys in that jurisdiction on a yearly basis.

27.    In chapter 7 cases, the Local Attorneys now receive up to thirty-three percent of the fees paid to UpRight Law.  The Local Attorney is responsible for all document collection and review and the preparation of the petition and schedules, with the exception of basic information – such as the debtors' address, the part of the statements of financial affairs concerning UpRight Law's compensation, and the preparation of the required Rule 2016 disclosures – which are all prepared by employees in UpRight Law's Chicago office.

28.    Mr. Homa signed an agreement with UpRight Law on October 10, 2016.

29.    Under this agreement, Mr. Homa receives 33% of the fees paid to UpRight Law by the clients whom UpRight Law refers to him if their cases are filed and the clients receive a discharge.

30.    Thus, the UpRight Law firm retains approximately 67% of the fees in each chapter 7 case for providing an initial "consultation" with a non-attorney salesperson, preparing and obtaining a signed retainer agreement, managing the debtors' payments, and completing a small

portion of the required petition, the statement of financial affairs question regarding payment of fees for bankruptcy services, and the Rule 2016 disclosure to be filed with the court.

31.    UpRight Law calls its non-attorney salespersons "consultants."  A consultation, however, is the act of asking the advice or opinion of someone professionally qualified (such as a lawyer) to get their advice.  UpRight Law entices vulnerable consumers to contact it to get "immediate. . . legal help" and get their "bankruptcy questions answered" and be told if they "qualify for bankruptcy protection." But UpRight Law intentionally and systematically offers a "free consultation" it has no intention of providing.  Rather, prospective assisted persons and prospective debtors that contact UpRight Law are misled about such free consultations as they are subjected to a sales pitch from, primarily, non-attorney salespersons referred to by UpRight Law as "Senior Client Consultants."[1] Generally, prospective assisted persons or prospective debtors are not placed into contact with an attorney unless and until they agree to a "verbal retainer" and either make a payment to UpRight Law or set up an electronic draft for a payment if they are not able to make an immediate payment.  Then, UpRight Law's standard practice is to charge such clients for all time thereafter including the first communication such client has with any attorney, let alone the attorney that would be responsible for providing legal services to the client.  The Debtor did not receive a free consultation with an attorney, and she did not speak with an attorney until after she made an initial payment.

32.    The Debtor paid two-thirds of her attorney fee to UpRight Law for largely non-legal, **non-compensable** services and, in reality, only one-third of her attorney fee went to the person providing actual legal services.

33.    The pattern or practice of UpRight Law since its inception is to perform the debtors'

---

[1] The title of "Senior Client Consultants" in and of itself is misleading given that in approximately January 2017, UpRight Law did away with the employee title of "Client Consultants" such that since that time, there have not been any "consultants" junior to the "Senior Client Consultants."

initial "consultation" using primarily *non-attorney* staff employed in UpRight Law's Chicago office.

34.    UpRight Law considers the activities of its "consultants" to be part of its "sale operations" and it has in the past trained its "consultants" to engage in high-pressure tactics and otherwise economically incentivized such employees to "close" sales, which practices and policies led to "consultants" engaging in the unauthorized practice of law.    Upon information and belief, UpRight Law continues to tie part of "consultants" compensation to fees collected.

35.    Thus, the pattern or practice of UpRight Law is for debtors' first substantive contact with UpRight Law to be with a "consultant" who is frequently a non-attorney. The non-attorney "consultants" are, essentially, telemarketers who are paid bonuses based at least in part upon the "sales" they make to prospective assisted persons and assisted persons.    Part of the salespersons' compensation package is based upon the amount of fees paid by the client within the first 30 days of the date of contact with UpRight Law.

36.    Thus, the salespersons have an incentive to sign-up new prospective assisted persons to file a bankruptcy case, regardless of the circumstances, regardless of whether the prospective assisted person is a good candidate for a bankruptcy case, and regardless of whether the prospective assisted person might be better advised not to file a bankruptcy case at all.

37.    In 2018, during the time that Debtor was making payments to UpRight Law, UpRight Law's gross sales and receipts were $28,683,556.00.

38.    UpRight Law non-attorney salespersons then provide the debtor information about the debtor's bankruptcy and non-bankruptcy options, including information as to the nature of the relief under each chapter of the Bankruptcy Code.

39.    There is evidence, as found by other bankruptcy courts, including the Western District of Virginia in *In re Williams,* 2018 WL 832894 (February 12, 2018), the Western District

of Louisiana in *In re Banks,* 2018 WL 735351(February 6, 2018), *aff'd, Law Solutions Chicago LLC v. United States Trustee,* 592 B.R. 624 (W.D. La. 2018), *aff'd* 770 Fed. Appx. 168 (5th Cir. 2019), and the District of South Carolina in *In re Walker,* 604 B.R. 10 (D.S.C. 2019), that UpRight Law's non-attorney "consultants" often provide legal advice to potential clients, who are prospective assisted persons, including exemption information and information about which chapter of bankruptcy best suits their needs.

40.    A majority of UpRight Law's clients are assisted persons as that term is defined in the Bankruptcy Code.  Under UpRight Law's standard operating practices, the non-attorney "consultant" and potential client, who is often a prospective assisted person, agree on a bankruptcy option, without attorney input, and the "consultant" then establishes an agreed plan for the payment of the attorney's fees in the case.  This has resulted in an installment payment plan lasting on average between four and eight months, or even longer, in numerous cases that remain pending before this Court.

41.    After the non-attorney "consultant" reaches a payment agreement with the prospective assisted person, the "consultant" reads the prospective assisted person a "verbal retainer" which sets forth the purported conditions of the representation.

42.    Before the prospective assisted person ever speaks with an attorney, the non-attorney "consultant" takes the prospective assisted person's bank information and obtains permission from the prospective assisted person to take an initial ACH payment to UpRight Law. The "verbal retainer" does not provide the complete terms of the assisted person's engagement agreement with UpRight Law, such that, assisted persons make their initial payment and agree to ACH debits for attorney's fees to UpRight Law based on an incomplete understanding of the terms and scope of UpRight Law's representation.

43.    UpRight Law then sends the prospective assisted person a written retainer

agreement under the signature of the Local Partner.

44.     Under their agreements with UpRight Law, the Local Partners, including Mr. Homa, delegate signature authority to UpRight Law for the purpose of affixing the Local Attorney's signature on the retainer agreements provided to prospective assisted persons. UpRight Law's standard practice is to permit the non-attorney "consultants" to affix the Local Attorney's signature to the retainer agreement provided to prospective assisted persons. Accordingly, in the vast majority of cases, the Local Attorney whose signature appears on the retainer agreement has no knowledge of the existence of this new client, has not reviewed or approved the sending of the retainer agreement in each specific case, has not reviewed the proposed attorneys' fees for reasonability and, has not had a chance to check for conflicts prior to the execution of the retainer agreement on his or her behalf.

45.     According to UpRight Law's practices, the Local Attorney to whom the case is being assigned is then sent an email, or other electronic communication, instructing the Local Attorney to contact the client with a brief phone call, which UpRight Law calls a "compliance call."  The compliance call provides the misleading impression that an actual attorney will immediately begin providing substantive legal services to the assisted person.

46.     With the exception of the compliance call and responding to creditor inquiries concerning its retention, UpRight Law generally maintains the pattern or practice of withholding performance of any *substantive* legal work to prepare the clients' bankruptcy case for filing, including the collection or the review of any documentation, until after the clients have paid their fees through any installment payment plan in full and the case is handed off to the local attorney.

47.     Thus, although UpRight Law maintains it is a proper law firm by virtue of its paper agreements with local attorneys, in reality, UpRight Law's organizational practice of providing prospective assisted persons and assisted persons with intake "consultations" with telemarketers

and only handing off their cases for substantive legal representation to Local Attorneys after cases are paid in full creates a system of practice that is more like a referral service than a law firm.

48.     Typically, neither UpRight Law's Chicago office nor its Local Attorney send debtors document requests or otherwise begin preparing a case for filing until *after* the fees are paid in full.

49.     UpRight Law's practice of accepting fees on an extended installment plan and not even beginning the process of preparing any of the documents prior to full payment contributes to lengthy delays between UpRight Law's retention by a debtor and the filing of the case which far exceed the typical retention-to-filing timeline in other cases with counsel in the Southern District of Illinois who are not associated with UpRight law.

50.     As a result, it may take from nine months to a year, or even longer, from the date debtors make their first payment and retain UpRight Law before their chapter 7 case is finally commenced (if at all) in this District. For forty-nine (49) cases currently under review before this Court, the average length of time from the date of the first payment to UpRight Law to the date of the filing of the case is three hundred seventy-seven (377) days, or just over one year.

51.     UpRight Law has a demonstrated history of significant filing delays in the Southern District of Illinois from the date of the payment in full of UpRight Law's attorney's fees and the court filing fee.   For the forty-nine (49) cases currently under review before this Court, the average length of time from the date of payment in full of UpRight Law's attorney's fees and court filing fee to the date of the filing of the case is two hundred fourteen 214 days, or seven months.

52.     Although UpRight Law advertises "immediate legal help" to prospective assisted persons, UpRight Law does not provide immediate legal help to prospective assisted persons and assisted persons until after UpRight Law has received payment in full of both the prospective assisted persons and assisted persons attorney's fees and court filing fee.

53.     Thus, UpRight Law's attorney referral operation is made apparent by its pattern and practice of failing to provide any substantive legal help to prospective assisted persons and assisted persons until the cases are paid in full and handed off to the local attorney for actual substantive legal review and filing.

54.     However, to the extent UpRight Law attempts to operate as a national law firm, its managing partners, previously Mr. Chern and now Mr. Deighan, fail to adequately supervise UpRight Law's non-attorney staff and its Local Attorneys, to the detriment of the prospective assisted persons and assisted persons who are persuaded by UpRight Law's advertising and sales pitches to retain UpRight Law for bankruptcy assistance services.

55.     UpRight Law's pattern or practice of failing to immediately provide any substantive legal help to prospective assisted persons and assisted persons often results in such prospective assisted persons and assisted persons being subjected lawsuits, judgments, and garnishments during the period after UpRight Law's retention and the ultimate filing of contracted for bankruptcy case in the Southern District of Illinois.

### B.     Facts Related to the Potter Case

42.     Debtor is a single mother of an infant and does not receive financial assistance from the infant's father.

43.     Debtor first contacted UpRight Law on the evening of Saturday, May 12, 2018, the day before Mother's Day.

44.     Debtor contacted UpRight Law after learning that very evening that a creditor, Cavalry SPV, LLC as assignee of Citibank, had commenced a state court lawsuit against Debtor in Effingham County, Illinois ("Lawsuit") and her mother had been served via abode service with a copy of the Complaint and Summons that evening at 6:11 p.m.

45.     Distraught and upset by the matter, Debtor performed a search of the term "bankruptcy" on the Internet using the Google search engine, which resulted in UpRight Law appearing as one of the first few results.

46.     Debtor then clicked on the UpRight Law website and reviewed the materials.

47.     The UpRight Law website provides for a form to be completed with basic information if Debtor wanted to be contacted by UpRight Law.   Debtor completed the form and submitted the information to UpRight Law via the website.

48.     That same evening and after submitting the UpRight Law information form, Debtor received a call from Chicago-based UpRight Law employee, non-attorney salesperson - "senior client consultant" Matt Arenstein ("Mr. Arenstein").

49.     Debtor's communication with Mr. Arenstein convinced her to file bankruptcy, to file a petition under chapter 7 and not chapter 13, to utilize the services of UpRight Law to file her bankruptcy case, and that she would pay UpRight Law the quoted sum of $1,675.00 in attorney's fees plus the court filing fee of $335.00 to accomplish her filing.   Debtor would also have to pay the costs of the pre-filing credit counseling and post-filing financial management course on her own and in addition to the attorney's fees and court filing fee.

50.     Debtor's attorney's fees to UpRight Law are significantly higher than those typically charged by UpRight Law Local Attorneys in the Southern District of Illinois than when the Local Attorney files a case under his own name and not under the UpRight Law name.

51.     During Debtor's initial call with Mr. Arenstein, Debtor advised that she had been served with a Lawsuit.

52.     During Debtor's initial call with Mr. Arenstein, Debtor advised of her then current address in Effingham County, which is a part of the Southern District of Illinois.

53.     During Debtor's initial call with Mr. Arenstein, Debtor advised that she had approximately $10,000 of unsecured debt, which amount included the Lawsuit.[2]

54.     During Debtor's initial call with Mr. Arenstein, Debtor provided Mr. Arenstein with her debit card information in order to make an initial down payment of $50.00 to UpRight Law for its attorney's fees.

55.     Upon information and belief, it appears that the initial call between Debtor and Mr. Arenstein was completed at approximately 6:53 p.m., or, 42 minutes after Debtor's mother was served with the Lawsuit.

56.     On May 16, 2018, four days after first speaking with Mr. Arenstein, Debtor received a phone call from Mr. Homa wherein Mr. Homa appears to have "approved the case."

57.     On May 22, 2018, Mr. Homa "[e]mailed a welcome packet and letter regarding process and information needed to process the petition."

58.     On May 23, 2018, eleven days after the initial call with Mr. Arenstein, the Debtor signed a Retainer Agreement with UpRight Law, a copy of which is attached hereto as Exhibit 1 ("Retainer Agreement").

59.     Debtor made a second payment of $150 to UpRight Law on May 25, 2018, six days prior to the first-appearance date on the Lawsuit set for May 31, 2018.

60.     Over the course of the next seven months, Debtor made her installment payments to UpRight Law for the fees and costs associated with her bankruptcy filing so that, as soon as her payment plan was completed, UpRight Law would file her bankruptcy case as represented by UpRight Law in the second bullet point of the Retainer Agreement.

---

[2] It appears from the filed schedules that Debtor also owes on a student loan in the amount of $10,000.

61.     Also, during that seven-month period, Debtor reached out to UpRight Law on seven separate, documented occasions, characterized by UpRight Law as "regarding general bankruptcy questions."

62.     On each of these occasions, rather than speaking with Mr. Homa or an attorney licensed in the State of Illinois, Debtor spoke with various non-attorney staff employed by UpRight Law in its Chicago headquarters and referred to by UpRight Law as an "UpRighter."

63.     Despite having paid $200 to UpRight Law, having signed a Retainer Agreement with UpRight Law, having told Mr. Arenstein about the Lawsuit, and allegedly having spoken with Mr. Homa concerning her financial situation (which would presumably include the Lawsuit), Debtor appeared unrepresented in Effingham County, Illinois Circuit Court for the first-appearance on the Lawsuit.

64.     At the first-appearance hearing on May 31, 2018, Debtor agreed to the entry of a judgment against her in favor of the creditor.

65.     Following entry of the judgment, and despite having retained UpRight Law, Debtor entered into a payment arrangement whereby Debtor would make monthly payments of $50.00 to be applied towards the judgment.  Debtor made payments totaling $125.00 to the judgment creditor in the Lawsuit, to be applied towards the judgment balance.

66.     Debtor made her last payment to UpRight Law on December 21, 2018.

67.     Mr. Homa was notified on that same day that Debtor had paid her attorney's fees and costs in full and the file was handed off to Mr. Homa.

68.     Debtor did not hear from Mr. Homa until he sent an email to Debtor on January 26, 2019, 36 days after Debtor had paid in full, "with the list of documents to compile."

69.    Thereafter, Debtor provided Mr. Homa with her debts or bills that she owed, her pay advices, tax returns, and various other documents necessary for Mr. Homa to prepare the documents necessary to file Debtor's bankruptcy case.

70.    In February 2019, Debtor received her refunds associated with her 2018 federal and state income tax returns.   The amounts of the refunds were $6,972 and $767, respectively, totaling $7,739.00.

71.    On February 12, 2019, Debtor contacted UpRight Law via email at help@uprightlaw.com stating "If I am wanting a refund on the payment, and not file what would I need to do?"

72.    Debtor did not receive a response to her February 12, 2019 email.

73.    Debtor sent a second email on February 18, 2019.  Mr. Homa responded to this second email by sending an email to Debtor.  Following that email communication, Debtor elected to continue with the bankruptcy filing process.

74.    Notably, it is UpRight Law's standard practice to discourage refund requests from clients who wish to discontinue their cases and to encourage clients to continue with filing a bankruptcy case.

75.    On April 8, 2019, Debtor completed her pre-filing credit counseling class and provided the Certificate of Counseling to Mr. Homa via email that same day.

76.    On April 22, 2019, the judgment creditor in the Lawsuit filed an Illinois Wage Garnishment proceeding against Debtor.   The garnishment was not successful in obtaining funds for the judgment creditor, only because the Debtor had recently changed employment.

77.    After having retained UpRight Law, Debtor received offers to settle various debts for less than the total amount owed.   UpRight Law and Mr. Homa knew about these settlement

offers, because they were set forth on the very bills or notices provided by Debtor to Mr. Homa, which Mr. Homa presumably used to prepare Debtor's bankruptcy documents.

78.     Debtor's Schedule E/F filed with the Court overstates the amount of her unsecured debt.   For example, it is clear from Schedule E/F that Mr. Homa included the debt owed to Citibank three different times, instead of just once. Similarly, Mr. Homa duplicated a debt owed on a medical bill to Infinity Meds at paragraphs 4.20 and 4.21 of Schedule E/F.

79.     Despite Debtor having received her 2018 federal and state tax refunds in February 2019, Mr. Homa scheduled the combined total amount of the refunds on Debtor's Schedule A/B at paragraph 28, even indicating that Debtor had received the refunds in February.

80.     Debtor did not have any of the 2018 tax refund in her possession as of the date of the commencement of the bankruptcy case.

81.     On June 18, 2019, thirteen months after Debtor paid her initial payment to UpRight Law, and six months after she had paid UpRight Law in full, Mr. Homa finally filed the Debtor's chapter 7 petition, commencing the above-captioned Bankruptcy Case.

82.     At no time from when Debtor had her initial contact with UpRight Law on May 12, 2018 until the date of Debtor's 341 meeting of creditors, held on August 8, 2019, did Debtor meet with Mr. Homa in a face to face or even in a video conference setting.   The first time Debtor met Mr. Homa face to face was just prior to her attending her 341 meeting of creditors.

83.     Despite the six month lapse between the Debtor's completion of her payments to UpRight Law and the five month lapse between Mr. Homa's contact with the Debtor to finally prepare her bankruptcy Petition, Schedules and Statement and the Petition Date, Mr. Homa failed to obtain the Debtor's wet signature prior to filing her case, as required on her Petition, Schedules, Verifications, and Statement.

84.     Nevertheless, Mr. Homa filed the Debtor's Petition, Schedules, Verifications and Statement without having obtained the Debtor's wet signature on the Petition Date. Thus, Mr. Homa was not authorized to file the Bankruptcy Case on that date.   In doing so, Mr. Homa made the intentional misrepresentation to the Court, in a document filed with the Court, that he had the authority to file the Bankruptcy Case when in fact he did not.

85.     The Debtor is not the only assisted person represented by UpRight Law in the Southern District of Illinois where there were significant delays between payment in full to Upright Law and filing of the assisted person's bankruptcy case.

86.     Moreover, Mr. Homa is not the only UpRight Law Local Attorney who has delayed filing UpRight Law's clients' cases in the Southern District of Illinois.   Accordingly, the delays from payment in full to filing are part of UpRight Law's pattern or practice in the Southern District of Illinois.

87.     Upon information and belief, the delays in filing UpRight Law's clients' cases result in part from UpRight Law's practice of providing clients little to no substantive legal services until after clients are paid in full.

88.     Debtor's petition indicates that her debts are primarily consumer debts and she listed total property, including non-exempt property, totaling $15,682.00; as such, Debtor is an assisted person as that term is defined in 11 U.S.C. § 101(3).

## Count I – Violation of Section 526(a)(2) of Title 11

89.     All of the preceding paragraphs this Complaint are incorporated herein by reference.

90.     UpRight Law is a debt relief agency as defined in 11 U.S.C. § 101(12A) and advertises its services as such.

91.     At all times relevant to this complaint, the Debtor was a prospective assisted person

or an assisted person as defined in 11 U.S.C. § 101(3).

92.     UpRight Law and Mr. Homa intentionally filed the petition on June 18, 2019, in violation of Electronic Filing Rules, Rule 5 of the United States Bankruptcy Court for the Southern District of Illinois, in that Mr. Homa did not have Debtor's wet signatures (or even copies of her wet signatures) on the petition when the case was commenced.

93.     The various electronic signatures that Mr. Homa affixed to the voluntary petition, schedules, statement of financial affairs and other required signature pages was a false representation by Mr. Homa that he had authority to affix Debtor's electronic signatures thereto.

94.     Debtor's Schedules A/B contained a clearly false statement of fact in that Schedule A/B falsely claimed that Debtor was to receive her 2018 federal and state tax refunds when, in fact, she already had received the refund and was no longer in possession of all or substantially all of the funds.

95.     Debtor's Schedule E/F contained clearly false statements of fact that resulted in the overstatement of her liabilities, specifically that Debtor owed Citibank for three different accounts when, in fact, she only owed one such account.

96.     Other courts throughout the country have found that UpRight Law violated Section 526(a) in numerous other cases, which demonstrates UpRight Law's clear and consistent pattern or practice of violating Section 526(a).

97.     Mr. Homa and UpRight Law violated Section 526(a)(2) by making statements, or advising the Debtor to make statements, in a document filed with the Court which were untrue, and which, through the exercise of reasonable care, would have been known to them to be untrue.

WHEREFORE, the Plaintiff prays for a final order and judgement on Count I:

A. Finding that both Defendants violated 11 U.S.C. § 526(a)(2);

B. Finding that such violations by UpRight Law were part of a clear and consistent pattern

or practice; or alternatively,

C.  Finding that such violations by both Defendants were done intentionally;

D.  Imposing an injunction pursuant to 11 U.S.C. § 526(c)(5)(A) against UpRight Law and barring UpRight Law from engaging in conduct which would violate Section 526(a), including filing pleadings with false statements of fact; and

E.  Imposing an appropriate civil penalty pursuant to § 526(c)(5)(B) of the Bankruptcy Code not to exceed $25,000 against UpRight Law and not to exceed $2,500 against Mr. Homa.

## Count II- Violation of Section 526(a)(3) of Title 11

98.    All of the preceding paragraphs of this Complaint are incorporated herein by reference.

99.    UpRight Law is a debt relief agency as defined in 11 U.S.C. § 101(12A) and advertises its services as such.

100.    At all times relevant to this complaint, the Debtor was a prospective assisted person or an assisted person as defined in 11 U.S.C. § 101(3).

101.    UpRight Law advertises and offers bankruptcy assistance services, as defined in 11 U.S.C. § 101(4A), and represents to substantially all potential clients and/or prospective assisted persons that it is efficient in the filing of bankruptcy cases and that it will provide immediate legal help to prospective assisted persons.

102.    In agreeing to represent Debtor in this Bankruptcy Case, and by entering into a representation agreement with Debtor to file a Chapter 7 Bankruptcy Case, UpRight Law misrepresented to Debtor its ability to file a Chapter 7 Bankruptcy Case in the Southern District of Illinois within a reasonable amount of time after Debtor completed her payments to UpRight Law.

103.    Specifically,    UpRight    Law    represented    to    Debtor    that:

✔ **We start work immediately.** We will start by *immediately* taking your creditor calls and preparing your case. As soon as your payment plan is completed, we will get you filed for bankruptcy.

104.    UpRight Law and Mr. Homa did not provide immediate legal help to the Debtor.

105.    The Debtor sought assistance from UpRight Law on May 12, 2018, right after she learned she was being sued.

106.    Although he is not an attorney, the non-attorney salesperson provided the Debtor's initial legal consultation with UpRight Law.

107.    UpRight Law's non-attorney salesperson took payment from the Debtor, obtained from the Debtor her agreement to a "verbal retainer", and set up a payment plan for her to pay for bankruptcy assistance on May 12, 2018, before Debtor ever spoke to an attorney.

108.    Debtor signed her retainer agreement on May 23, 2018.

109.    Shortly after Debtor's initial payment, the "compliance" call with Mr. Homa, and the signing of her retainer agreement with UpRight Law, Debtor attended a hearing on the Lawsuit and was subjected to a judgment by one of her creditors.

110.    After speaking with a non-attorney salesperson, Mr. Arenstein, making an initial payment, and agreeing to retain UpRight Law, Debtor did not receive any substantive immediate legal help from UpRight Law or Mr. Homa until nearly eight months later.

111.    In this District, after its non-attorney salespersons sign up its clients, UpRight Law has a pattern and practice of not providing prospective assisted persons and assisted persons with immediate substantive legal help or bankruptcy assistance for many months, until after the prospective assisted person and assisted persons have paid all fees in full.

112.    Debtor paid her fees in full to UpRight Law on December 21, 2018, but no bankruptcy case was commenced on her behalf until six months later, on June 18, 2019.

113.    UpRight Law has a demonstrated history of failing to timely file cases in the

Southern District of Illinois, thus demonstrating a pattern or practice of excessively delayed case filing.

114.    UpRight Law has been found by other bankruptcy courts not to timely file cases, thus demonstrating a pattern or practice of excessively delayed case filing.

115.    In this case, Debtor paid her fees in full to UpRight Law on December 21, 2018, and no case was commenced on her behalf until seven months later, on June 18, 2019.

116.    UpRight Law and its local partner attorneys have filed numerous cases in this District since January 2019 which demonstrate lengthy filing delays from the time UpRight Law was paid in full.

117.    UpRight Law has a clear and consistent pattern or practice of representing to debtors that it can, and will, file a bankruptcy case in this District within a reasonable amount of time, while at the same time having a demonstrated record of failing to do so.

118.    Any express or implied representation to the Debtor that UpRight Law could, and would, timely file a Chapter 7 Bankruptcy Case in the Southern District of Illinois after the completion of the Debtor's payments was false and misleading, and UpRight Law and Mr. Homa knew of the falsity of such representations at the time they were made, given its history of failing to timely file cases in this district.

119.    UpRight Law and Mr. Homa knew, or reasonably should have known, that Debtor's case would not get filed with the Court as soon as her payment plan was complete, because neither UpRight Law nor Mr. Homa require (or even request) that the Debtor provide the necessary documentation and information to complete the schedules and related documents until after the attorney's fees and court costs are paid in full.

WHEREFORE, the Plaintiff prays for a final order and judgement on Count II:

A.  Finding that both Defendants violated 11 U.S.C. § 526(a)(3);

B.  Finding that such violations by UpRight Law were part of clear and consistent pattern or practice or were done intentionally;

C.  Imposing an injunction pursuant to 11 U.S.C. § 526(c)(5)(A) against UpRight Law and barring UpRight Law from engaging in conduct which would violate Section 526(a), including representing to Debtors that it is "efficient" or able to timely file a case or that it will provide immediate legal help; and,

D.  Imposing an appropriate civil penalty pursuant to § 526(c)(5)(B) of the Bankruptcy Code not to exceed $25,000 against UpRight Law and not to exceed $2,500 against Mr. Homa.

**Count III- Violation of Section 526(a)(1) or, in the alternative, 526(a)(3) of Title 11**

120.  All of the preceding paragraphs of this Complaint are incorporated herein by reference.

121.  UpRight Law is a debt relief agency as defined in 11 U.S.C. § 101(12A) and advertises its services as such.

122.  At all times relevant to this complaint, the Debtor was a prospective assisted person or an assisted person as defined in 11 U.S.C. § 101(3).

123.  UpRight Law advertises and offers bankruptcy assistance services, as defined in 11 U.S.C. § 101(4A), and represents to substantially all potential clients and/or prospective assisted persons that it provides a free consultation to prospective assisted persons.

124.  Debtor did not receive the benefit of the advertised free consultation.

125.  During Debtor's first call with UpRight Law, through its non-attorney Senior Client Consultant Mr. Arenstein, the decision was made for Debtor to pursue a chapter 7 bankruptcy filing without the Debtor speaking with a licensed attorney.

126.  Before Debtor spoke over the telephone with Mr. Homa, Debtor agreed upon the

total amount of the attorney's fees to be paid to UpRight Law and to that end, made a payment on $50.00 to UpRight Law.

127.    Debtor did not receive the benefit of the free consultation as advertised, promoted and promised by UpRight Law prior to verbally agreeing to pursue a chapter 7 bankruptcy filing utilizing the services of UpRight Law.

128.    Any express representation to the Debtor that she would receive a free consultation from UpRight Law was false and misleading, and UpRight Law knew of the falsity of such representation at the time it was made, given its history of failing to provide a free "legal consultation."

WHEREFORE, the Plaintiff prays for a final order and judgement on Count III:

A.    Finding that Defendant UpRight Law violated 11 U.S.C. § 526(a)(1) or, in the alternative, 11 U.S.C. § 526(a)(3);

B.    Finding that such violations by UpRight Law were part of clear and consistent pattern or practice or were done intentionally;

C.    Imposing an injunction pursuant to 11 U.S.C. § 526(c)(5)(A) against UpRight Law and barring UpRight Law from engaging in conduct which would violate Section 526(a), including representing to Debtors that it will provide a free consultation; and,

D.    Imposing an appropriate civil penalty pursuant to § 526(c)(5)(B) of the Bankruptcy Code not to exceed $25,000 against UpRight Law.

## Count IV- Disgorgement of Fees Paid Pursuant to 11 U.S.C. § 329(b) and Rule 2017

129.    All of the preceding paragraphs of this Complaint are incorporated herein by reference.

130.    The Debtor entered into a written retainer agreement with UpRight Law and Mr. Homa under which UpRight Law and Mr. Homa agreed to represent the Debtor in her bankruptcy

case.   The Debtor paid UpRight Law and Mr. Homa together attorney's fees of $1,675.00.

131.    Debtor was sued by at least one creditor and subjected to judgment and collection between the time she engaged UpRight Law and began making payments towards its attorney's fees and when her Bankruptcy Case was filed.   Debtor thereafter made payments totaling $125 to the judgment creditor, all while Debtor was making payments to UpRight Law.

132.    Debtor sought assistance to file a bankruptcy case and contacted Upright Law because she believed UpRight Law's advertisements that it would be able to help her in that regard. Debtor paid a total of $1,675.00 in attorney's fees to UpRight Law for bankruptcy assistance. Debtor then was forced to wait 402 days *after* UpRight Law began first providing bankruptcy assistance and almost seven months *after* having paid UpRight Law in full before UpRight Law finally commenced her Bankruptcy Case, during which time Debtor was sued by at least one creditor, agreed to a judgment on that debt, and then wasted her money making payments on that judgment debt.

133.    Moreover, the total attorney fee Debtor paid to UpRight for legal representation in her bankruptcy case is substantially higher than the average fee charged by Local Attorneys who practice in this District when they are not associated with UpRight Law.

134.    During the time between when Debtor initially retained UpRight Law and made payments to UpRight Law and when Mr. Homa finally contacted the Debtor more than a month after she was paid in full, the Debtor received little to no substantive legal assistance from UpRight Law lawyers. In fact, as many as seven calls from Debtor to UpRight were handled only by non-lawyer staff designated as an "UpRighter." As such, the Debtor did not receive any real added value from UpRight Law's services that justifies and makes reasonable its higher fees.

135.    Even though this case was not filed in a rush, the information contained in the schedules was inaccurate.   Specifically, Schedule A/B included assets that were no longer in

Debtor's possession (tax refund) and Schedule E/F inflated Debtor's liabilities, thereby making Debtor's financial picture appear much worse than it truly was.

136.   Debtor did not receive adequate personal attention when she may have realized that she could satisfy or settle her debts given the available cash assets of her tax refunds in the total amount of $7,900 and the attorney's fees and court filing fee paid to UpRight Law ($2,010). When she asked for a refund in February 2019 following receipt of her tax refunds, her initial email was ignored. Following her second email request, instead of being provided an in-person legal consultation, Debtor received only an email and voicemail from Mr. Homa, resulting in her abandoning her request for a refund.

137.   All compensation paid by the Debtor to UpRight Law for the basic bankruptcy services provided over the extensive number of months of its retention due to UpRight Law's own apparent disregard and lack of diligence is unreasonable and excessive.   Accordingly, such fees must be disgorged back to the Debtor pursuant to 11 U.S.C. § 329 and Fed.R.Bankr.Proc. 2017.

138.   The retention of any fees by UpRight Law is unreasonable and unconscionable under the facts and circumstances of this Bankruptcy Case.

WHEREFORE, the Plaintiff prays for a final order and judgment on Count III:

A.   Determining that the attorney's fees UpRight Law and Mr. Homa charged the Debtor in this case are excessive and unreasonable;

B.   Determining that retention of any fees in this case by Defendants UpRight Law, LLC and Mr. Homa is unreasonable in this case;

C.   Canceling the Retainer Agreement between Debtor and UpRight Law and Mr. Homa;

D.   Ordering disgorgement of all fees to Debtor pursuant to 11 U.S.C. § 329(b) and Rule 2017; and,

E.   For any other and further relief the Court deems just and proper under the

circumstances.

Dated: September 15, 2020

Respectfully Submitted,

NANCY J. GARGULA,
United States Trustee

*/s/ Mark D. Skaggs*

Mark D. Skaggs,
Trial Attorney

Mark D. Skaggs, ARDC No.: 6210087
United States Department of Justice
Office of the United States Trustee
401 Main Street, Suite 1100
Peoria, IL 61602
Phone: (309) 671-7854, ext. 226
Mobile: (202) 495-9571
Email: Mark.D.Skaggs@usdoj.gov