## UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS
## EFFINGHAM DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CHELSEA LYNNE POTTER, | ) | Case No. 19-60216 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| NANCY J. GARGULA, | ) | |
| UNITED STATES TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 20-06008 |
| | ) | |
| DEIGHAN LAW, LLC | ) | |
| f/k/a LAW SOLUTIONS CHICAGO LLC, | ) | **ANSWER AND ADDITIONAL DEFENSES** |
| d/b/a UPRIGHT LAW LLC, | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| and | ) | |
| | ) | |
| ERIC JAMES HOMA, | ) | |
| | ) | |
| Defendants | ) | |

## I.    RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants Deighan Law LLC, d/b/a in Illinois as Upright Law LLC (hereafter referred to as "UpRight Law") and Eric Homa ("Mr. Homa") (collectively "Defendants") hereby respond to Plaintiff's Amended Adversary Complaint (Doc. 31) ("Adversary Complaint" or "Complaint"), filed by Nancy Gargula, the United States Trustee for Region 10 ("UST").  To the extent not expressly admitted herein, each and every other allegation contained in the Adversary Complaint is denied, including but not limited to the various Prayers' for relief contained in the Complaint, and all captions contained throughout the Complaint.

## JURISDICTION AND VENUE

1.    This is a complaint in which the U.S. Trustee is seeking compensatory and injunctive relief as well as the imposition of sanctions against Deighan Law LLC, formerly known as Law Solutions

Chicago LLC, and doing business as UpRight Law LLC, ("UpRight Law") and Attorney Eric

Homa, who provided legal services to the Chapter 7 Debtor Chelsea Lynne Potter ("Debtor") in

case number 19-60216 now pending in the United States Bankruptcy Court for the Southern

District of Illinois, Effingham Division.

**ANSWER:** Defendants admit Paragraph 1.

2.     The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b)  and

a general order of reference from the United States District Court for the Southern District of Illinois.

**ANSWER:** Defendants admit Paragraph 2.

3.      This proceeding is both a constitutionally and statutorily core proceeding under 28 U.S.C.

§ 157(b)(2)(A) and (O) in that it asserts only claims arising directly under title 11 of the United States

Code. Nevertheless, to the extent any of these proceedings are non-core, the U.S. Trustee consents

to the entry of a final judgment by the Bankruptcy Court in accordance with the local rules of this

Court.

**ANSWER:** Defendants deny that this case is constitutionally or statutorily a core proceeding

under 28 U.S.C. §157(b)(2)(A) or (O).  Further stating, Defendants do not consent to the entry of a

final judgment by the Bankruptcy Court in this case.

4.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

**ANSWER:**  Defendants admit that venue is proper in the U.S. District Court for Southern

District of Illinois.  However, to the extent that Paragraph 4 is intended to state or imply that the

Bankruptcy Court is the proper Court under these circumstances, it is denied.

### Parties

5.     Plaintiff is the duly appointed United States Trustee for Region 10, which includes the

Southern District of Illinois.

**ANSWER**:  Defendants admit Paragraph 5.

6.     Plaintiff has standing and files this Complaint in her official capacity pursuant to 28 U.S.C. § 586(a) and 11 U.S.C. § 307.

**ANSWER**:  Defendants admit that Plaintiff has filed this Complaint in her official capacity pursuant to 28 U.S.C. § 586(a) and 11 U.S.C. § 307.  Defendants further admit that Plaintiff possesses statutory standing to file this Complaint.  Defendants, however, deny that constitutional standing exists with respect to the UST's claim relating to a "free consultation," as it does not present a "case or controversy."

7.     Defendant, UpRight Law is an Illinois limited liability company with its principal place of business in Chicago, Illinois.

**ANSWER**:  Defendants admit Paragraph 7.

8.     UpRight Law provided legal services to the Debtor in connection with the filing of a Chapter 7 bankruptcy case, docketed as case number 19-60216 (the "Bankruptcy Case").

**ANSWER**:  Defendants admit Paragraph 8.

9.     Defendant Eric James Homa, a member of the bar of this Court, purports to be a partner of UpRight Law ("Mr. Homa"). Mr. Homa executed and electronically filed the bankruptcy petition, schedules ("Schedules"), and the statement of financial affairs (the "Statement") in this case utilizing the Court's CM/ECF system.

**ANSWER**:  Defendants admit paragraph 9, except to the extent that the UST's use of the word "purport" is intended to suggest that Mr. Homa's affiliation with UpRight Law is not bona fide.

10.    Robert T. Bruegge serves as the duly appointed Chapter 7 Trustee (the "Chapter 7 Trustee").

**ANSWER**:  Defendants admit that Robert T. Bruegge is the Chapter 7 Trustee of record in the bankruptcy case docketed as case number 19-60216, but lack knowledge sufficient to admit or deny

3

any allegation relating to the circumstances of his appointment.

## Procedural History

11.    Debtor filed her voluntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on June 18, 2019 (the "Petition").

**ANSWER:**  Defendants admit Paragraph 11.

12.    Mr. Homa signed Debtor's Petition on page 7 as counsel for Debtor. Mr. Homa's signature block on the Petition attests that he was filing this case as an attorney of UpRight Law.

**ANSWER:**  Defendants admit Paragraph 12.

## Factual Allegations Relevant to All Counts

### A.    The Structure and Business Model of UpRight Law

13.    UpRight Law operates primarily from its main office in Chicago, Illinois.

**ANSWER:**  Defendants deny Paragraph 13.

14.    As of June 1, 2015, UpRight Law had three equity members, Kevin Chern, Jason Allen, and David Leibowitz (the "Equity Members").

**ANSWER:**   Defendants admit that on June 1, 2015, UpRight Law had three equity members: Kevin Chern, Jason Allen, and David Leibowitz.  To the extent that Paragraph 14 is intended to allege that this constitutes the current equity membership of the firm, it is denied.

15.    Between 2015 and his departure from UpRight Law in early 2019, Kevin Chern was the managing partner and the attorney who had supervisory responsibility over the company's attorney and non-attorney staff and local partners.

**ANSWER:**  Defendants admit Paragraph 15.

16.    UpRight Law asserts that Mr. Allen ceased his job functions in June 2018 and signed his separation papers on July 18, 2018, while Mr. Chern officially resigned on February 19, 2019.

4

**ANSWER**:  Defendants admit that Mr. Allen signed his separation papers on July 18, 2018. Defendants lacks knowledge sufficient to form a belief as to the sufficiency of the allegation as to what "UpRight Law asserts," which is not clarified in paragraph 16.  Defendants deny the remainder of Paragraph 16.

17.   Michael Deighan a/k/a Mike Deighan is now the majority equity member of UpRight Law, and in and around May of 2019, the firm changed its legal name to Deighan Law LLC. Following Mr. Chern's departure from UpRight Law, Mr. Deighan became and is now the managing partner and attorney who has supervisory authority over the company's attorney and non-attorney staff and local partners. Online records for the State Bar of Michigan indicate that Mr. Deighan is licensed to practice in Michigan, while the online records of the Illinois Attorney Registration & Disciplinary Commission indicate that Mr. Deighan is not licensed to practice law in Illinois.

**ANSWER**:   Defendants admit Paragraph 17.

18.   UpRight Law's advertising, including its website, found at https://www.uprightlaw.com/, states that UpRight Law is a debt relief agency and that it "help[s] people file for relief under the Bankruptcy Code."

**ANSWER**:   Defendants admit Paragraph 18.

19.   Prior to his departure from UpRight Law and Mike Deighan's succession as equity owner and Managing Partner, UpRight Law's website named Mr. Chern as the attorney responsible for the content of the site. UpRight Law's website currently provides that "An attorney responsible for the content of this site is Mike Deighan, Esq., licensed in Michigan with an office at 79 West Monroe Street, 5th Floor, Chicago, Illinois 60603." The website further directs prospective assisted persons who view it to click a link to "To see the attorney in your area who is responsible for this advertisement."

**ANSWER**:  The first two sentences of Paragraph 19 are admitted.  Defendants further admit

that the website contains a link that permits any visitor to the website to click a hyperlink that enables the visitor to see who in that visitor's area is responsible for the advertisement. Defendants deny the remainder of Paragraph 19.

20.    Below statements such as "We bring the law office to the living room," "Do you qualify for bankruptcy protection," "Get immediate access to legal help on your terms," and "Have 10 minutes? Get your bankruptcy questions answered here," UpRight Law's website advertises, among other things, that it provides a "free consultation" and that:

> "At UpRight Law, every day we look for ways to *Make Clients Love Us* and to *Find a Better Way*! By providing immediate legal help to people with limited means, even when they cannot afford to pay for legal services today, we advance these values. When we say, "get started for free," we mean it. Every day, UpRight Law starts providing debt relief assistance to dozens of clients even before they have paid us any money. We do ask that they make a commitment to pay something by scheduling a future payment, but we are committed to providing assistance now and placing our clients' immediate need for help first."

Available at www.uprightlaw.com (last accessed September 7, 2020).

**ANSWER:**  Defendants state that Paragraph 20 is unintelligible, and that Defendants therefore lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20.

21.    UpRight Law's advertising asserts that it is committed to "Increasing Efficiency delivering fair and just outcomes effectively, without waste or duplication."

**ANSWER:**  Defendants admit that this statement appears on its website, and that its website constitutes a form of advertising. Defendants deny the remainder of Paragraph 21.

22.    UpRight Law's website advertises that it can assist the Debtor in repairing a credit score and represents that "we've partnered with experts in the credit rehabilitation business to offer you the information and guidance you need. This valuable information, paired with our credit report auditing, will help set you on the path toward a future free from financial stress."

6

**ANSWER:** Defendants admit Paragraph 22.

23. UpRight Law commences cases in bankruptcy courts throughout the United States, including in this Court, through its affiliations with locally licensed attorneys.

**ANSWER:** Defendants deny Paragraph 23, and note that UpRight Law has never filed for bankruptcy.

24. UpRight Law refers to its local attorneys (hereinafter, "Local Attorneys") as "limited partners" and/or "partner attorneys" based on the execution of a "Partnership Agreement."

**ANSWER:** Defendants admit that UpRight Law refers to the majority of its affiliated attorneys as "limited partners" or "partner attorneys." Defendants further admit that these attorneys execute a Partnership Agreement with the firm. Defendants deny the remainder of Paragraph 24, including the suggestion that all partners have signed an identical partnership agreement. Defendants further deny that these are the only titles used by attorneys who file cases as attorneys for UpRight Law.

25. The Partnership Agreement provides for the division of fees between UpRight Law and the Local Attorney on a case-by-case basis based on the completion of certain tasks by the Local Attorney in a chapter 7 or a chapter 13 case.

**ANSWER:** Defendants lack knowledge or information as to the particular agreement to which the Complaint refers in Paragraph 25. Defendants further state that the agreement that governed the relationship between Upright Law and Mr. Homa throughout the Debtor's bankruptcy was the October 10, 2016 partnership agreement between them. Defendants admit that this agreement addresses, *inter alia*, the manner in which attorney fees would be allocated between UpRight Law and Mr. Homa for Chapter 7 and Chapter 13 representations.

26. The Partnership Agreement also provides for the distribution of 1% of the profits generated in each jurisdiction to the Local Attorneys in that jurisdiction on a yearly basis.

**ANSWER:** Defendants lack knowledge or information as to the particular agreement to which

the Complaint refers in Paragraph 26.  Defendants admit that the October 10, 2016 partnership agreement between Eric Homa and UpRight Law provides for the distribution of 1% of the profits generated in each jurisdiction to the Local Attorneys in that jurisdiction on a yearly basis.

27.    In chapter 7 cases, the Local Attorneys now receive up to thirty-three percent of the fees paid to UpRight Law. The Local Attorney is responsible for all document collection and review and the preparation of the petition and schedules, with the exception of basic information – such as the debtors' address, the part of the statements of financial affairs concerning UpRight Law's compensation, and the preparation of the required Rule 2016 disclosures – which are all prepared by employees in UpRight Law's Chicago office.

**ANSWER:**  Defendants admit that the Local Attorneys are ultimately responsible for the final "document collection and [*sic*] review and the preparation of the petition and schedules."  Defendants deny the remainder of Paragraph 27.

28.    Mr. Homa signed an agreement with UpRight Law on October 10, 2016.

**ANSWER:**  Defendants admit Paragraph 28.

29.    Under this agreement, Mr. Homa receives 33% of the fees paid to UpRight Law by the clients whom UpRight Law refers to him if their cases are filed and the clients receive a discharge.

**ANSWER:**    Defendants deny Paragraph 29 as it is written, but admit that under certain circumstances, the Partnership Agreement does provide for a payment to Mr. Homa of 33% of the attorneys' fees.

30.    Thus, the UpRight Law firm retains approximately 67% of the fees in each chapter 7 case for providing an initial "consultation" with a non-attorney salesperson, preparing and obtaining a signed retainer agreement, managing the debtors' payments, and completing a small portion of the required petition, the statement of financial affairs question regarding payment of fees for bankruptcy services, and the Rule 2016 disclosure to be filed with the court.

8

**ANSWER:** Defendants deny Paragraph 30.

31.    UpRight Law calls its non-attorney salespersons "consultants." A consultation, however, is the act of asking the advice or opinion of someone professionally qualified (such as a lawyer) to get their advice. UpRight Law entices vulnerable consumers to contact it to get "immediate. . . legal help" and get their "bankruptcy questions answered" and be told if they "qualify for bankruptcy protection." But UpRight Law intentionally and systematically offers a "free consultation" it has no intention of providing. Rather, prospective assisted persons and prospective debtors that contact UpRight Law are misled about such free consultations as they are subjected to a sales pitch from, primarily, non-attorney salespersons referred to by UpRight Law as "Senior Client Consultants." Generally, prospective assisted persons or prospective debtors are not placed into contact with an attorney unless and until they agree to a "verbal retainer" and either make a payment to UpRight Law or set up an electronic draft for a payment if they are not able to make an immediate payment. Then, UpRight Law's standard practice is to charge such clients for all time thereafter including the first communication such client has with any attorney, let alone the attorney that would be responsible for providing legal services to the client. The Debtor did not receive a free consultation with an attorney, and she did not speak with an attorney until after she made an initial payment.

**ANSWER:** Defendants deny Paragraph 31.

32.    The Debtor paid two-thirds of her attorney fee to UpRight Law for largely non- legal, **non-compensable** services and, in reality, only one-third of her attorney fee went to the person providing actual legal services.

**ANSWER:** Defendants deny Paragraph 32.

33.    The pattern or practice of UpRight Law since its inception is to perform the debtors' initial "consultation" using primarily *non-attorney* staff employed in UpRight Law's Chicago office.

**ANSWER:** Defendants admit that the initial consultations are generally (but not exclusively)

performed by non-attorney staff employed in UpRight Law's Chicago office.  Defendants deny the remainder of Paragraph 33.

34.    UpRight Law considers the activities of its "consultants" to be part of its "sale operations" and it has in the past trained its "consultants" to engage in high-pressure tactics and otherwise economically incentivized such employees to "close" sales, which practices and policies led to "consultants" engaging in the unauthorized practice of law. Upon information and belief, UpRight Law continues to tie part of "consultants" compensation to fees collected.

**ANSWER**:  Defendants deny the first sentence of Paragraph 34.  Defendants admit the second sentence of Paragraph 34 to the extent that part of the compensation for the intake staff is potentially related to the overall amount of fees collected by the firm.  Defendants deny the remainder of paragraph 34.

35.    Thus, the pattern or practice of UpRight Law is for debtors' first substantive contact with UpRight Law to be with a "consultant" who is frequently a non-attorney. The non-attorney "consultants" are, essentially, telemarketers who are paid bonuses based at least in part upon the "sales" they make to prospective assisted persons and assisted persons. Part of the salespersons' compensation package is based upon the amount of fees paid by the client within the first 30 days of the date of contact with UpRight Law.

**ANSWER**:  Defendants admit that compensation levels of certain of its intake staff may be affected by the amount of fees collected from firm clients.  The remainder of Paragraph 35 is denied.

36.    Thus, the salespersons have an incentive to sign-up new prospective assisted persons to file a bankruptcy case, regardless of the circumstances, regardless of whether the prospective assisted person is a good candidate for a bankruptcy case, and regardless of whether the prospective assisted person might be better advised not to file a bankruptcy case at all.

**ANSWER**:  Defendants deny Paragraph 36.

37.   In 2018, during the time that Debtor was making payments to UpRight Law, UpRight Law's gross sales and receipts were $28,683,556.00.

**ANSWER:**  Defendants deny Paragraph 37.

38.   UpRight Law non-attorney salespersons then provide the debtor information about the debtor's bankruptcy and non-bankruptcy options, including information as to the nature of the relief under each chapter of the Bankruptcy Code.

**ANSWER:**  Defendants admit that during an initial consultation with a prospective client, the Senior Client Consultant typically provides objective information about potential bankruptcy and non-bankruptcy options, including information about the differences between Chapter 7 and Chapter 13 bankruptcies.  The remainder of Paragraph 38 is denied.

39.   There is evidence, as found by other bankruptcy courts, including the Western District of Virginia in *In re Williams,* 2018 WL 832894 (February 12, 2018), the Western District of Louisiana in *In re Banks,* 2018 WL 735351 (February 6, 2018), *aff'd, Law Solutions Chicago LLC v. United States Trustee,* 592 B.R. 624 (W.D. La. 2018), *aff'd* 770 Fed. Appx. 168 (5th Cir. 2019), and the District of South Carolina in *In re Walker,* 604 B.R. 10 (D.S.C. 2019), that UpRight Law's non-attorney "consultants" often provide legal advice to potential clients, who are prospective assisted persons, including exemption information and information about which chapter of bankruptcy best suits their needs.

**ANSWER:**  Defendants deny Paragraph 39, including any implication that these cases constitute evidence of the firm's current practices.

40.   A majority of UpRight Law's clients are assisted persons as that term is defined in the Bankruptcy Code. Under UpRight Law's standard operating practices, the non-attorney "consultant" and potential client, who is often a prospective assisted person, agree on a bankruptcy option, without attorney input, and the "consultant" then establishes an agreed plan for the payment of the attorney's

fees in the case. This has resulted in an installment payment plan lasting on average between four and eight months, or even longer, in numerous cases that remain pending before this Court.

**ANSWER:** Defendants state that the first sentence of this Paragraph calls for a legal conclusion. To the extent an answer is required, that first sentence is denied. Defendants admit that the Senior Client Consultant often agrees on a plan with prospective clients under which the client will pay his or her fees in installments, which is subject to change. Defendants deny the remainder of Paragraph 40.

41.   After the non-attorney "consultant" reaches a payment agreement with the prospective assisted person, the "consultant" reads the prospective assisted person a "verbal retainer" which sets forth the purported conditions of the representation.

**ANSWER:**   Defendants admit that firm's intake staff, which is comprised mostly of non-attorneys, typically read a verbal disclosure to the firm's client after the client has expressed interest in engaging the firm, which relates to certain aspects of the firm's representation of the client. Defendants deny the remainder of paragraph 41, including to the extent that it is intended to imply that all of UpRight Law's intake staff is comprised of non-attorneys, or that its non-attorneys are not subject to direct supervision of attorneys.

42.   Before the prospective assisted person ever speaks with an attorney, the non-attorney "consultant" takes the prospective assisted person's bank information and obtains permission from the prospective assisted person to take an initial ACH payment to UpRight Law. The "verbal retainer" does not provide the complete terms of the assisted person's engagement agreement with UpRight Law, such that, assisted persons make their initial payment and agree to ACH debits for attorney's fees to UpRight Law based on an incomplete understanding of the terms and scope of UpRight Law's representation.

**ANSWER:** Defendants admit that there are times in which a new firm client will provide his

or her relevant debit card information authorization for the firm to make an initial ACH debit before that client has spoken to an attorney.  Defendants further admit that the verbal disclosure does not provide the complete terms of the representation, which are reflected in the retention agreement. Defendants lack knowledge or information sufficient to admit or deny allegations relating to the "understanding" of its clients.  Defendants deny the remainder of paragraph 42, including: (a) any implication that the debit cards of the firm's clients are always charged before they have spoken with an attorney; (b) that the provision of debit card information is the equivalent of charging the client's debit card; and (c) that the verbal disclosures are the sole source of information relating to the terms of the representation.

43.   UpRight Law then sends the prospective assisted person a written retainer agreement under the signature of the Local Partner.

**ANSWER**:  Defendants admit that the firm's standard procedure is to send its clients a written retainer agreement within five business days, to which the electronic signature of the Local Partner is affixed, and which is subject to certain terms and conditions in the agreement.  Defendants lack information sufficient to form a belief about the truth of the allegations in the context of this abstract hypothetical as to whether that person would constitute a "prospective assisted person."  Defendants deny the remainder of Paragraph 43.

44.   Under their agreements with UpRight Law, the Local Partners, including Mr. Homa, delegate signature authority to UpRight Law for the purpose of affixing the Local Attorney's signature on the retainer agreements provided to prospective assisted persons. UpRight Law's standard practice is to permit the non-attorney "consultants" to affix the Local Attorney's signature to the retainer agreement provided to prospective assisted persons. Accordingly, in the vast majority of cases, the Local Attorney whose signature appears on the retainer agreement has no knowledge of the existence of this new client, has not reviewed or approved the sending of the retainer agreement

in each specific case, has not reviewed the proposed attorneys' fees for reasonability and, has not had a chance to check for conflicts prior to the execution of the retainer agreement on his or her behalf.

**ANSWER:** Defendants admit that the Partnership Agreement between Mr. Homa and UpRight Law authorizes the firm to affix the digital signature of Mr. Homa for purposes of issuing the retention agreement. Defendants lack information sufficient to admit or deny the third sentence of Paragraph 44. Defendants deny the remainder of Paragraph 44, including the implication that Paragraph 44 contains a complete recitation of the relevant provisions in Mr. Homa's Partnership Agreement relating to the affixation of Mr. Homa's signature, as well as the suggestion that the intake staff prepares or sends retention agreements to the client.

45. According to UpRight Law's practices, the Local Attorney to whom the case is being assigned is then sent an email, or other electronic communication, instructing the Local Attorney to contact the client with a brief phone call, which UpRight Law calls a "compliance call." The compliance call provides the misleading impression that an actual attorney will immediately begin providing substantive legal services to the assisted person.

**ANSWER:** Defendants admit that the firm's standard practice is to have the attorney assigned to the new client speak with the client shortly after the client has engaged the firm, and that UpRight Law refers to this as a "Compliance Call." Defendants further admit that the method of notifying the attorney that he or she has been assigned a new client is by way of e-mail. Defendants deny the remainder of Paragraph 45.

46. With the exception of the compliance call and responding to creditor inquiries concerning its retention, UpRight Law generally maintains the pattern or practice of withholding performance of any *substantive* legal work to prepare the clients' bankruptcy case for filing, including the collection or the review of any documentation, until after the clients have paid their fees through any installment payment plan in full and the case is handed off to the local attorney.

**ANSWER:**  Defendants deny Paragraph 46.

47.    Thus, although UpRight Law maintains it is a proper law firm by virtue of its paper agreements with local attorneys, in reality, UpRight Law's organizational practice of providing prospective assisted persons and assisted persons with intake "consultations" with telemarketers and only handing off their cases for substantive legal representation to Local Attorneys after cases are paid in full creates a system of practice that is more like a referral service than a law firm.

**ANSWER:**  Defendants admit that UpRight Law is a proper law firm.  Defendants deny the remainder of Paragraph 47.

48.    Typically, neither UpRight Law's Chicago office nor its Local Attorney send debtors document requests or otherwise begin preparing a case for filing until *after* the fees are paid in full.

**ANSWER:**  Defendants deny Paragraph 48.

49.    UpRight Law's practice of accepting fees on an extended installment plan and not even beginning the process of preparing any of the documents prior to full payment contributes to lengthy delays between UpRight Law's retention by a debtor and the filing of the case which far exceed the typical retention-to-filing timeline in other cases with counsel in the Southern District of Illinois who are not associated with UpRight law.

**ANSWER:**  Defendants lack knowledge or information sufficient to enable it to admit or deny allegations relating to what is, or what the UST believes to be, "the typical retention-to-filing timeline in other cases with counsel in the Southern District of Illinois who are not associated with UpRight Law."  To the extent a further response is required, Defendants deny Paragraph 49.

50.    As a result, it may take from nine months to a year, or even longer, from the date debtors make their first payment and retain UpRight Law before their chapter 7 case is finally commenced (if at all) in this District. For forty-nine (49) cases currently under review before this Court, the average length of time from the date of the first payment to UpRight Law to the date of the filing of

the case is three hundred seventy-seven (377) days, or just over one year.

**ANSWER:** Defendants admit that there are cases in which the amount of time that has elapsed between the time that a client engages the firm and the time that he or she files for bankruptcy under Chapter 7 is nine months or longer. Defendants lack information sufficient to admit or deny the remainder of this paragraph given the UST has not specified the 49 cases that are currently under review that she used in her calculation.

51.    UpRight Law has a demonstrated history of significant filing delays in the Southern District of Illinois from the date of the payment in full of UpRight Law's attorney's fees and the court filing fee. For the forty-nine (49) cases currently under review before this Court, the average length of time from the date of payment in full of UpRight Law's attorney's fees and court filing fee to the date of the filing of the case is two hundred fourteen 214 days, or seven months.

**ANSWER:** Defendants deny the first sentence of Paragraph 51. Defendants lack information sufficient to admit or deny the remainder of this paragraph given the UST has not specified the 49 cases that are currently under review that she used in her calculation.

52.    Although UpRight Law advertises "immediate legal help" to prospective assisted persons, UpRight Law does not provide immediate legal help to prospective assisted persons and assisted persons until after UpRight Law has received payment in full of both the prospective assisted persons and assisted persons attorney's fees and court filing fee.

**ANSWER:** Defendants deny Paragraph 52.

53.    Thus, UpRight Law's attorney referral operation is made apparent by its pattern and practice of failing to provide any substantive legal help to prospective assisted persons and assisted persons until the cases are paid in full and handed off to the local attorney for actual substantive legal review and filing.

**ANSWER:** Defendants deny Paragraph 53.

54.   However, to the extent UpRight Law attempts to operate as a national law firm, its managing partners, previously Mr. Chern and now Mr. Deighan, fail to adequately supervise UpRight Law's non-attorney staff and its Local Attorneys, to the detriment of the prospective assisted persons and assisted persons who are persuaded by UpRight Law's advertising and sales pitches to retain UpRight Law for bankruptcy assistance services.

**ANSWER:**  Defendants deny Paragraph 54.

55.   UpRight Law's pattern or practice of failing to immediately provide any substantive legal help to prospective assisted persons and assisted persons often results in such prospective assisted persons and assisted persons being subjected lawsuits, judgments, and garnishments during the period after UpRight Law's retention and the ultimate filing of contracted for bankruptcy case in the Southern District of Illinois.

**ANSWER:**  Defendants deny Paragraph 55.

### B. Facts Related to the Potter Case

56.   Debtor is a single mother of an infant and does not receive financial assistance from the infant's father.

**ANSWER:**   Defendants deny that Debtor is single. Debtors deny that she does not receive financial assistance for any "infant" but does have an older child.

57.   Debtor first contacted UpRight Law on the evening of Saturday, May 12, 2018, the day before Mother's Day.

**ANSWER:**  Defendants admit Paragraph 57.

58.   Debtor contacted UpRight Law after learning that very evening that a creditor, Cavalry SPV, LLC as assignee of Citibank, had commenced a state court lawsuit against Debtor in Effingham County, Illinois ("Lawsuit") and her mother had been served via abode service with a copy of the Complaint and Summons that evening at 6:11 p.m.

**ANSWER:**  Defendants admit the allegations in Paragraph 58.

59.   Distraught and upset by the matter, Debtor performed a search of the term "bankruptcy" on the Internet using the Google search engine, which resulted in UpRight Law appearing as one of the first few results.

**ANSWER:**  Defendants lack knowledge or information sufficient to enable them to admit or deny Paragraph 59, because the allegation does not identify or specify the "matter".

60.   Debtor then clicked on the UpRight Law website and reviewed the materials.

**ANSWER:**  Defendants lack knowledge or information sufficient to enable them to admit or deny Paragraph 59, because the allegation does not identify or specify the "materials".

61.   The UpRight Law website provides for a form to be completed with basic information if Debtor wanted to be contacted by UpRight Law. Debtor completed the form and submitted the information to UpRight Law via the website.

**ANSWER:**  Defendants admit that UpRight Law's website provides a form that prospective clients can complete if they wish to be contacted by UpRight Law.  Defendants deny the remainder of Paragraph 61.

62.   That same evening and after submitting the UpRight Law information form, Debtor received a call from Chicago-based UpRight Law employee, non-attorney salesperson - "senior client consultant" Matt Arenstein ("Mr. Arenstein").

**ANSWER:**  Defendants admit that Mr. Arenstein spoke with Ms. Potter on May 12, 2018, and that he was not an attorney.  Defendants deny the remainder of Paragraph 62.

63.   Debtor's communication with Mr. Arenstein convinced her to file bankruptcy, to file a petition under chapter 7 and not chapter 13, to utilize the services of UpRight Law to file her bankruptcy case, and that she would pay UpRight Law the quoted sum of $1,675.00 in attorney's fees plus the court filing fee of $335.00 to accomplish her filing. Debtor would also have to pay the

costs of the pre-filing credit counseling and post-filing financial management course on her own and in addition to the attorney's fees and court filing fee.

**ANSWER:** Defendants admit that Mr. Arenstein quoted a $1,675 attorney fee for representation in a Chapter 7 Bankruptcy, and a filing fee of $335. Defendants further admit the second sentence of Paragraph 63. Defendants deny the remainder of paragraph 63.

64. Debtor's attorney's fees to UpRight Law are significantly higher than those typically charged by UpRight Law Local Attorneys in the Southern District of Illinois than when the Local Attorney files a case under his own name and not under the UpRight Law name.

**ANSWER:** Defendants deny that the $1,675 attorney fee paid by Ms. Potter is significantly higher than the fees that Mr. Homa "typically" charges to clients in his individual practice in the Southern District of Illinois, given that Mr. Homa does not typically file cases in the Southern District of Illinois.

65. During Debtor's initial call with Mr. Arenstein, Debtor advised that she had been served with a Lawsuit.

**ANSWER:** Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 65.

66. During Debtor's initial call with Mr. Arenstein, Debtor advised of her then current address in Effingham County, which is a part of the Southern District of Illinois.

**ANSWER:** Defendants deny Paragraph 66.

67. During Debtor's initial call with Mr. Arenstein, Debtor advised that she had approximately $10,000 of unsecured debt, which amount included the Lawsuit.

**ANSWER:** Defendants admit that Ms. Potter advised Mr. Arenstein that she had approximately $10,000 of unsecured debt. Defendants lack knowledge or information sufficient to admit or deny the remainder of Paragraph 67.

68.   During Debtor's initial call with Mr. Arenstein, Debtor provided Mr. Arenstein with her debit card information in order to make an initial down payment of $50.00 to UpRight Law for its attorney's fees.

**ANSWER**:  Defendants admit Paragraph 68.

69.   Upon information and belief, it appears that the initial call between Debtor and Mr. Arenstein was completed at approximately 6:53 p.m., or, 42 minutes after Debtor's mother was served with the Lawsuit.

**ANSWER**:  Defendants admit Paragraph 69.

70.   On May 16, 2018, four days after first speaking with Mr. Arenstein, Debtor received a phone call from Mr. Homa wherein Mr. Homa appears to have "approved the case."

**ANSWER**:   Defendants admit that Mr. Homa called the Debtor on May 16, 2018, spoke with her about whether to pursue a Chapter 7 bankruptcy, and approved her case.

71.   On May 22, 2018, Mr. Homa "[e]mailed a welcome packet and letter regarding process and information needed to process the petition."

**ANSWER**:   Defendants admit Paragraph 71.

72.   On May 23, 2018, eleven days after the initial call with Mr. Arenstein, the Debtor signed a Retainer Agreement with UpRight Law, a copy of which is attached hereto as Exhibit 1 ("Retainer Agreement").

**ANSWER**:  Defendants admit Paragraph 72.

73.   Debtor made a second payment of $150 to UpRight Law on May 25, 2018, six days prior to the first-appearance date on the Lawsuit set for May 31, 2018.

**ANSWER**:  Defendants admit that the Debtor made a second payment of $150 to UpRight Law on May 25, 2018; that this was 6 days before May 31, 2018; and that the first-appearance date on the

Lawsuit was set for May 31, 2018.  To the extent Paragraph 73 is intended to imply that Defendants were retained for the purpose of representing Ms. Potter at this hearing, it is denied.

74.  Over the course of the next seven months, Debtor made her installment payments to UpRight Law for the fees and costs associated with her bankruptcy filing so that, as soon as her payment plan was completed, UpRight Law would file her bankruptcy case as represented by UpRight Law in the second bullet point of the Retainer Agreement.

**ANSWER:**  Defendants admit that the Debtor made her payments of attorney fees and filing fees to the firm in installments over the course of approximately seven months.  Defendants deny the remainder of Paragraph 74.

75.  Also, during that seven-month period, Debtor reached out to UpRight Law on seven separate, documented occasions, characterized by UpRight Law as "regarding general bankruptcy questions."

**ANSWER:**  Defendants admit Paragraph 75.

76.  On each of these occasions, rather than speaking with Mr. Homa or an attorney licensed in the State of Illinois, Debtor spoke with various non-attorney staff employed by UpRight Law in its Chicago headquarters and referred to by UpRight Law as an "UpRighter."

**ANSWER:**  Defendants deny Paragraph 76.

77.  Despite having paid $200 to UpRight Law, having signed a Retainer Agreement with UpRight Law, having told Mr. Arenstein about the Lawsuit, and allegedly having spoken with Mr. Homa concerning her financial situation (which would presumably include the Lawsuit), Debtor appeared unrepresented in Effingham County, Illinois Circuit Court for the first- appearance on the Lawsuit.

**ANSWER:**  Defendants admit that the as of May 31, 2018, the Debtor had paid $200 to UpRight Law; that she had signed a retainer agreement for representation in a Chapter 7 bankruptcy; that she

had spoken to Mr. Homa about her bankruptcy; and that the Debtor appeared unrepresented at the first appearance on the Lawsuit. Defendants deny the remainder of Paragraph 77, including any implication that Defendants were under any duty to represent Ms. Potter in the Lawsuit.

78.    At the first-appearance hearing on May 31, 2018, Debtor agreed to the entry of a judgment against her in favor of the creditor.

**ANSWER:**  Defendants admit Paragraph 78.

79.    Following entry of the judgment, and despite having retained UpRight Law, Debtor entered into a payment arrangement whereby Debtor would make monthly payments of $50.00 to be applied towards the judgment. Debtor made payments totaling $125.00 to the judgment creditor in the Lawsuit, to be applied towards the judgment balance.

**ANSWER:**  Defendants admit that following the judgment, Debtor entered into a payment arrangement with the creditor, and that Debtor made payments totaling $125 to the judgment creditor. Defendants further admit that the Debtor retained UpRight Law.  Defendants lack knowledge or information sufficient to enable them to admit or deny the terms of the payment arrangement.  The Defendants deny the remainder of Paragraph 79.

80.    Debtor made her last payment to UpRight Law on December 21, 2018.

**ANSWER:**  Defendants admit Paragraph 80.

81.    Mr. Homa was notified on that same day that Debtor had paid her attorney's fees and costs in full and the file was handed off to Mr. Homa.

**ANSWER:**  Defendants admit Paragraph 81.

82.    Debtor did not hear from Mr. Homa until he sent an email to Debtor on January 26, 2019, 36 days after Debtor had paid in full, "with the list of documents to compile."

**ANSWER:**  Defendants admit that Mr. Homa did not communicate with the Debtor during the 36 days that elapsed between December 21, 2018, and January 26, 2019, when he sent an e-mail

"with the list of documents to compile."  Defendants deny the remainder of Paragraph 82, including any implication that Mr. Homa had never communicated with the Debtor before January 26, 2019.

83.   Thereafter, Debtor provided Mr. Homa with her debts or bills that she owed, her pay advices, tax returns, and various other documents necessary for Mr. Homa to prepare the documents necessary to file Debtor's bankruptcy case.

**ANSWER:**  Defendants admit that between January 26, 2019 and June 18, 2019, the Debtor provided Mr. Homa with the documentation necessary to prepare and file the Debtor's bankruptcy case.  To the extent that Paragraph 83 is intended to contain or imply any other allegation, it is denied.

84.   In February 2019, Debtor received her refunds associated with her 2018 federal and state income tax returns. The amounts of the refunds were $6,972 and $767, respectively, totaling $7,739.00.

**ANSWER:**  Defendants admit Paragraph 84.

85.   On February 12, 2019, Debtor contacted UpRight Law via email at help@uprightlaw.com stating "If I am wanting a refund on the payment, and not file what  would I need to do?"

**ANSWER:**  Defendants admit Paragraph 85.

86.   Debtor did not receive a response to her February 12, 2019 email.

**ANSWER:**  Defendants deny Paragraph 86.

87.   Debtor sent a second email on February 18, 2019.  Mr. Homa responded to this second email by sending an email to Debtor. Following that email communication, Debtor elected to continue with the bankruptcy filing process.

**ANSWER:**  Defendants admit Paragraph 87.

88.   Notably, it is UpRight Law's standard practice to discourage refund requests from clients who wish to discontinue their cases and to encourage clients to continue with filing a bankruptcy case.

**ANSWER:**  Defendants deny Paragraph 88.

89.    On April 8, 2019, Debtor completed her pre-filing credit counseling class and provided the Certificate of Counseling to Mr. Homa via email that same day.

**ANSWER:**  Defendants admit Paragraph 89.

90.    On April 22, 2019, the judgment creditor in the Lawsuit filed an Illinois Wage Garnishment proceeding against Debtor. The garnishment was not successful in obtaining funds for the judgment creditor, only because the Debtor had recently changed employment.

**ANSWER:**  Defendants admit that on April 22, 2019, the judgment creditor in the Lawsuit filed an Illinois Wage Garnishment.  They further admit that the garnishment was not successful in obtaining funds for the judgment creditor.  Defendants note that a wage deduction action is not an action "against" a consumer, and accordingly deny that this was an action "against Debtor."  *See Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 864 (7th Cir. 2016).  Defendants lack sufficient information to admit or deny the remainder of Paragraph 90.

91.    After having retained UpRight Law, Debtor received offers to settle various debts for less than the total amount owed. UpRight Law and Mr. Homa knew about these settlement offers, because they were set forth on the very bills or notices provided by Debtor to Mr. Homa, which Mr. Homa presumably used to prepare Debtor's bankruptcy documents.

**ANSWER:**  Defendants admit that the Debtor received some debt collection letters that referenced settlement, that Mr. Homa was aware of at least some of them, and that Mr. Homa used some of the documentation provided by the Debtor to prepare the bankruptcy petition, schedules, and statements.  Defendants deny the remainder of Paragraph 91, including any implication that entering into a debt settlement would have been a better alternative for the Debtor than filing a Chapter 7 Bankruptcy petition.

92.    Debtor's Schedule E/F filed with the Court overstates the amount of her unsecured debt.

For example, it is clear from Schedule E/F that Mr. Homa included the debt owed to Citibank three different times, instead of just once. Similarly, Mr. Homa duplicated a debt owed on a medical bill to Infinity Meds at paragraphs 4.20 and 4.21 of Schedule E/F.

**ANSWER:**  Defendants admit Paragraph 92 only to the extent that the total amount of debt appears to have been slightly overstated.  Further stating, Defendants state that the creditor names and/or amounts varied for each of the relevant entries.  The Petition contains the following duplicates on Schedule E/F: Blitt and Gaines, $3502.06 (6.1); Citi Cards, $3502.06 (11.1), and Cavalry Portfolio ($3,848.00).  Thus, although these entries pertained to the same debt, the listed creditors and/or amounts varied.  Similarly, 4.20 and 4.21 with respect to the $707.48 debt were listed as two different creditors as they had two different names, and there is nothing on the record which actually indicates it is for the same service or product as opposed to a repeated product or prescription, which is common.

93.   Despite Debtor having received her 2018 federal and state tax refunds in February 2019, Mr. Homa scheduled the combined total amount of the refunds on Debtor's Schedule A/B at paragraph 28, even indicating that Debtor had received the refunds in February.

**ANSWER:**   Defendants admit Paragraph 93.   Further stating, Defendants state that the Complaint ignores a relevant amendment that was made on December 30, 2019, more than three months before the Chapter 7 Trustee issued his final report, and more than eight (8) months before the Complaint was filed.

94.   Debtor did not have any of the 2018 tax refund in her possession as of the date of the commencement of the bankruptcy case.

**ANSWER:**  Defendants admit Paragraph 94.

95.   On June 18, 2019, thirteen months after Debtor paid her initial payment to UpRight Law, and six months after she had paid UpRight Law in full, Mr. Homa finally filed the Debtor's chapter

7 petition, commencing the above-captioned Bankruptcy Case.

**ANSWER:** Defendants admit that Mr. Homa initiated the Debtor's bankruptcy case by filing Debtor's Chapter 7 petition on June 18, 2019; that this occurred approximately thirteen months after the Debtor had made her initial payment to UpRight Law; and that this occurred approximately six months after the Debtor had paid in full.  Defendants deny the remainder of Paragraph 95.

96.    At no time from when Debtor had her initial contact with UpRight Law on May 12, 2018 until the date of Debtor's 341 meeting of creditors, held on August 8, 2019, did Debtor meet with Mr. Homa in a face to face or even in a video conference setting. The first time Debtor met Mr. Homa face to face was just prior to her attending her 341 meeting of creditors.

**ANSWER:** Defendants admit Paragraph 96.

97.    Despite the six-month lapse between the Debtor's completion of her payments to UpRight Law and the five month lapse between Mr. Homa's contact with the Debtor to finally prepare her bankruptcy Petition, Schedules and Statement and the Petition Date, Mr. Homa failed to obtain the Debtor's wet signature prior to filing her case, as required on her Petition, Schedules, Verifications, and Statement.

**ANSWER:** Defendants deny Paragraph 97.  Further stating, Mr. Homa obtained wet signatures from the Debtor on May 18, 2019, and out of an abundance of caution, obtained another set of wet signatures dated June 18, 2019.

98.    Nevertheless, Mr. Homa filed the Debtor's Petition, Schedules, Verifications and Statement without having obtained the Debtor's wet signature on the Petition Date. Thus, Mr. Homa was not authorized to file the Bankruptcy Case on that date. In doing so, Mr. Homa made the intentional misrepresentation to the Court, in a document filed with the Court, that he had the authority to file the Bankruptcy Case when in fact he did not.

**ANSWER:** Defendants deny Paragraph 98.  Further stating, Mr. Homa possessed the Debtor's

authorization to file the petition on her behalf at the time he filed it.

99.   The Debtor is not the only assisted person represented by UpRight Law in the Southern District of Illinois where there were significant delays between payment in full to Upright Law and filing of the assisted person's bankruptcy case.

**ANSWER:**   Defendants admit that Ms. Potter was an "assisted person," and that it has represented other clients in the Southern District of Illinois who are or were "assisted persons." Defendants lack knowledge or information as to what the UST believes constitutes a "significant delay."  Defendants deny the remainder of Paragraph 99.

100.   Moreover, Mr. Homa is not the only UpRight Law Local Attorney who has delayed filing UpRight Law's clients' cases in the Southern District of Illinois.  Accordingly, the delays from payment in full to filing are part of UpRight Law's pattern or practice in the Southern District of Illinois.

**ANSWER:**   Defendants admit that Mr. Homa is not the only UpRight Law attorney that has filed bankruptcy cases in the U.S. Bankruptcy Court for the Southern District of Illinois.  Defendants deny the remainder of Paragraph 100.

101.   Upon information and belief, the delays in filing UpRight Law's clients' cases result in part from UpRight Law's practice of providing clients little to no substantive legal services until after clients are paid in full.

**ANSWER:**   Defendants deny Paragraph 101.

102.   Debtor's petition indicates that her debts are primarily consumer debts and she listed total property, including non-exempt property, totaling $15,682.00; as such, Debtor is an assisted person as that term is defined in 11 U.S.C. § 101(3).

**ANSWER:**   Defendants admit Paragraph 102.

### Count I – Violation of Section 526(a)(2) of Title 11

103.  All of the preceding paragraphs this Complaint are incorporated herein by reference.

**ANSWER:**  Defendants incorporate their responses to preceding paragraphs of the Complaint by reference.

104.  UpRight Law is a debt relief agency as defined in 11 U.S.C. § 101(12A) and advertises its services as such.

**ANSWER:**  Defendants admit that UpRight Law advertises that it is a debt relief agency, and that it acted as a debt relief agency within the meaning of 11 U.S.C. §101(12A) in its representation of Ms. Potter.  Defendants deny the remainder of Paragraph 104 to the extent it intends to contain or imply any other allegation.

105.  Mr. Homa is a debt relief agency as defined in 11 U.S.C. § 101(12A) and advertises his services as such.

**ANSWER:**  Defendants deny that Mr. Homa acted as a "debt relief agency" within the meaning of §101(12A) in the representation of Ms. Potter, or that any of his advertisements indicated that he was a debt relief agency for purposes of the representation of the Debtor.

106.      At all times relevant to this complaint, the Debtor was a prospective assisted person or an assisted person as defined in 11 U.S.C. § 101(3).

 **ANSWER:**  Defendants admit that for purposes of her bankruptcy case, Ms. Potter constituted an "assisted person" as defined in 11 U.S.C. §101(3).  Defendants do not know what the UST believes to constitute "all relevant times," and therefor lacks information sufficient to admit or deny the remainder of Paragraph 106.

107.  UpRight Law and Mr. Homa intentionally filed the petition on June 18, 2019, in violation of Electronic Filing Rules, Rule 5 of the United States Bankruptcy Court for the Southern District of Illinois, in that Mr. Homa did not have Debtor's wet signatures (or even copies of her wet signatures)

on the petition when the case was commenced.

**ANSWER:**  Defendants deny Paragraph 107.

108.   The various electronic signatures that Mr. Homa affixed to the voluntary petition, schedules, statement of financial affairs and other required signature pages was a false representation by Mr. Homa that he had authority to affix Debtor's electronic signatures thereto.

**ANSWER:**  Defendants deny Paragraph 108.

109.  Debtor's Schedules A/B contained a clearly false statement of fact in that Schedule A/B falsely claimed that Debtor was to receive her 2018 federal and state tax refunds when, in fact, she already had received the refund and was no longer in possession of all or substantially all of the funds.

**ANSWER:**  Defendants deny that Paragraph 109 constituted a false statement.  Defendants state that the information provided was not false, but merely stale, and that Mr. Homa addressed this issue by way of a December 30, 2019 amendment that the Complaint completely ignores.

110.  Debtor's Schedule E/F contained clearly false statements of fact that resulted in the overstatement of her liabilities, specifically that Debtor owed Citibank for three different accounts when, in fact, she only owed one such account.

**ANSWER:**  Defendants deny that Schedule E/F of Debtor's petition contained "clearly false statements of fact," but admit that a minor, immaterial overstatement of the Debtor's liabilities may have occurred.

111.  Other courts throughout the country have found that UpRight Law violated Section 526(a) in numerous other cases, which demonstrates UpRight Law's clear and consistent pattern or practice of violating Section 526(a).

**ANSWER:**  Defendants deny that other courts throughout the country have found that UpRight Law violated Section 526(a) "in numerous other cases," particularly given the overall number of

cases that the firm has filed nationally, or that it demonstrates that the Debtor's case was part of a "clear and consistent pattern or practice" of violating Section 526(a).

112. Mr. Homa and UpRight Law violated Section 526(a)(2) by making statements, or advising the Debtor to make statements, in a document filed with the Court which were untrue, and which, through the exercise of reasonable care, would have been known to them to be untrue.

**ANSWER:** Defendants deny Paragraph 112.

### Count II- Violation of Section 526(a)(3) of Title 11

113. All of the preceding paragraphs of this Complaint are incorporated herein by reference.

**ANSWER:** Defendants incorporate their responses to Preceding paragraphs of the Complaint by reference.

114. UpRight Law is a debt relief agency as defined in 11 U.S.C. § 101(12A) and advertises its services as such.

**ANSWER:** Defendants admit that UpRight Law advertises that it is a debt relief agency, and that it acted as a debt relief agency within the meaning of 11 U.S.C. §101(12A) in its representation of Ms. Potter. Defendants deny the remainder of Paragraph 114 to the extent it intends to contain or imply any other allegation.

115. Mr. Homa is a debt relief agency as defined in 11 U.S.C. § 101(12A) and advertises his services as such.

**ANSWER:** Defendants deny that Mr. Homa acted as a "debt relief agency" within the meaning of §101(12A) in the representation of Ms. Potter, or that any of his advertisements indicated that he was a debt relief agency for purposes of the representation of the Debtor.

116. At all times relevant to this complaint, the Debtor was a prospective assisted person or an assisted person as defined in 11 U.S.C. § 101(3).

**ANSWER:** Defendants admit that for purposes of her bankruptcy case, Ms. Potter constituted

an "assisted person" as defined in 11 U.S.C. §101(3).  Defendants do not know what the UST believes to constitute "all relevant times," and therefor lacks information sufficient to admit or deny the remainder of Paragraph 116.

117.  UpRight Law advertises and offers bankruptcy assistance services, as defined in 11 U.S.C. § 101(4A) and represents to substantially all potential clients and/or prospective assisted persons that it is efficient in the filing of bankruptcy cases and that it will provide immediate legal help to prospective assisted persons.

**ANSWER:**  Defendants admit that UpRight Law advertises and offers bankruptcy assistance services as defined in 11 U.S.C. § 101(4A).  The remainder of Paragraph 117 is denied.

118.  In agreeing to represent Debtor in this Bankruptcy Case, and by entering into a representation agreement with Debtor to file a Chapter 7 Bankruptcy Case, UpRight Law misrepresented to Debtor its ability to file a Chapter 7 Bankruptcy Case in the Southern District of Illinois within a reasonable amount of time after Debtor completed her payments to UpRight Law.

**ANSWER:**   Defendants admit that UpRight Law agreed to represent the Debtor in her bankruptcy case, and that it entered into an agreement that reflected the terms of that agreement, which was reflected in the retention agreement.  The remainder of Paragraph 118 is denied.

119.  Specifically, UpRight Law represented to Debtor that:



**We start work immediately.** We will start by *immediately* taking your creditor calls and preparing your case. As soon as your payment plan is completed, we will get you filed for bankruptcy.

**ANSWER:**  Defendants admit that Paragraph 119 accurately quotes a portion of the cover sheet to the retention agreement between UpRight Law and the Debtor.  To the extent that Paragraph 119 purports to include other allegations, or that it is intended to imply that there are no other statements in the retention agreement that further explain the timeline and obligations of the parties.

120.  UpRight Law and Mr. Homa did not provide immediate legal help to the Debtor.

**ANSWER:**  Defendants deny Paragraph 120.

121.  The Debtor sought assistance from UpRight Law on May 12, 2018, right after she learned she was being sued.

**ANSWER:**  Defendants admit Paragraph 121.

122.  Although he is not an attorney, the non-attorney salesperson provided the Debtor's initial legal consultation with UpRight Law.

**ANSWER:**  Defendants admit that Matt Arenstein, a non-attorney Senior Client Consultant, conducted the initial consultation with the Debtor.  Defendants deny the remainder of Paragraph 122.

123.  UpRight Law's non-attorney salesperson took payment from the Debtor, obtained from the Debtor her agreement to a "verbal retainer", and set up a payment plan for her to pay for bankruptcy assistance on May 12, 2018, before Debtor ever spoke to an attorney.

**ANSWER:**  Defendants admit that Senior Client Consultant, Matt Arenstein, worked with Ms. Potter on May 12, 2018 for her to establish a payment plan using her debit card, which included a $50 payment toward her attorney fees.  Defendants further admit that Mr. Arenstein provided a verbal disclosure to Ms. Potter on that day.  Defendants also admit that at the time that Mr. Arenstein performed these tasks, Ms. Potter had not yet spoken to an UpRight Law attorney.  Defendants deny the remainder of Paragraph 123.

124.  Debtor signed her retainer agreement on May 23, 2018.

**ANSWER:**  Defendants admit Paragraph 124.

125.  Shortly after Debtor's initial payment, the "compliance" call with Mr. Homa, and the signing of her retainer agreement with UpRight Law, Debtor attended a hearing on the Lawsuit and was subjected to a judgment by one of her creditors.

**ANSWER:**  Defendants admit that the Debtor made two installment payments of attorney fees in May 2018; that Mr. Homa and Ms. Potter spokeon May 16, 2018; that this constituted the

Compliance Call; that Ms. Potter signed her retention agreement on May 23, 2018; that she attended a hearing on a lawsuit on May 31, 2018; and that an agreed judgment was entered against her.  To the extent that Paragraph 125 is intended to contain or imply any additional allegations, it is denied.

126.  After speaking with a non-attorney salesperson, Mr. Arenstein, making an initial payment, and agreeing to retain UpRight Law, Debtor did not receive any substantive immediate legal help from UpRight Law or Mr. Homa until nearly eight months later.

**ANSWER:**  Defendants deny Paragraph 126.

127.   In this District, after its non-attorney salespersons sign up its clients, UpRight Law has a pattern and practice of not providing prospective assisted persons and assisted persons with immediate substantive legal help or bankruptcy assistance for many months, until after the prospective assisted person and assisted persons have paid all fees in full.

**ANSWER:**  Defendants deny Paragraph 127.

128.  Debtor paid her fees in full to UpRight Law on December 21, 2018, but no bankruptcy case was commenced on her behalf until six months later, on June 18, 2019.

**ANSWER:**  Defendants admit that the Debtor paid her fees in full to UpRight Law on December 21, 2018; that her bankruptcy case was filed on June 18, 2019; and that approximately 6 months elapsed between these dates.  The remainder of Paragraph 128 is denied.

129.   UpRight Law has a demonstrated history of failing to timely file cases in the Southern District of Illinois, thus demonstrating a pattern or practice of excessively delayed case filing.

**ANSWER:**  Defendants deny Paragraph 129.

130.   UpRight Law has been found by other bankruptcy courts not to timely file cases, thus demonstrating a pattern or practice of excessively delayed case filing.

**ANSWER:**  Defendants deny Paragraph 130.

131.   In this case, Debtor paid her fees in full to UpRight Law on December 21, 2018, and no case was commenced on her behalf until seven months later, on June 18, 2019.

**ANSWER:**  Defendants admit that the Debtor paid her fees in full to UpRight Law on December 21, 2018, and that her bankruptcy case was filed on June 18, 2019.  The remainder of Paragraph 131 is denied.

132.  UpRight Law and its local partner attorneys have filed numerous cases in this District since January 2019 which demonstrate lengthy filing delays from the time UpRight Law was paid in full.

**ANSWER:**  Defendants admit that UpRight Law and its local partner attorneys have filed numerous cases in the Southern District of Illinois since January 2019.  Defendants lack knowledge or information as to what the Complaint means by "lengthy filing delays," and therefore unable to admit or deny this allegation.  To the extent a response is required as to this allegation, it is denied.

133.    UpRight Law has a clear and consistent pattern or practice of representing to debtors that it can, and will, file a bankruptcy case in this District within a reasonable amount of time, while at the same time having a demonstrated record of failing to do so.

**ANSWER:**  Defendants deny Paragraph 133.

134.    Any express or implied representation to the Debtor that UpRight Law could, and would, timely file a Chapter 7 Bankruptcy Case in the Southern District of Illinois after the completion of the Debtor's payments was false and misleading, and UpRight Law and Mr. Homa knew of the falsity of such representations at the time they were made, given its history of failing to timely file cases in this district.

**ANSWER:**  Defendants deny Paragraph 134.

135.  UpRight Law and Mr. Homa knew, or reasonably should have known, that Debtor's case would not get filed with the Court as soon as her payment plan was complete, because neither UpRight Law nor Mr. Homa require (or even request) that the Debtor provide the necessary

documentation and information to complete the schedules and related documents until after the attorney's fees and court costs are paid in full.

**ANSWER:** Defendants deny Paragraph 135.

### Count III- Violation of Section 526(a)(1) or, in the alternative, 526(a)(3) of Title 11

136.    All of the preceding paragraphs of this Complaint are incorporated herein by reference.

**ANSWER:** Defendants incorporate their responses to preceding Paragraphs of the Complaint by reference.

137.    UpRight Law is a debt relief agency as defined in 11 U.S.C. § 101(12A) and advertises its services as such.

**ANSWER:**    Defendants admit that UpRight Law advertises that it is a debt relief agency, and that it acted as a debt relief agency within the meaning of 11 U.S.C. §101(12A) in its representation of Ms. Potter.  Defendants deny the remainder of Paragraph 137 to the extent it intends to contain or imply any other allegation.

138.    Mr. Homa is a debt relief agency as defined in 11 U.S.C. § 101(12A) and advertises his services as such.

**ANSWER:** Defendants deny that Mr. Homa acted as a "debt relief agency" within the meaning of §101(12A) in the representation of Ms. Potter, or that any of his advertisements indicated that he was a debt relief agency for purposes of the representation of the Debtor.

139.    At all times relevant to this complaint, the Debtor was a prospective assisted person or an assisted person as defined in 11 U.S.C. § 101(3).

**ANSWER:** Defendants admit that for purposes of her bankruptcy case, Ms. Potter constituted an "assisted person" as defined in 11 U.S.C. §101(3).  Defendants do not know what the UST believes to constitute "all relevant times," and therefor lacks information sufficient to admit or deny the remainder of Paragraph 139.

35

140.    UpRight Law advertises and offers bankruptcy assistance services, as defined in 11 U.S.C. § 101(4A) and represents to substantially all potential clients and/or prospective assisted persons that it provides a free consultation to prospective assisted persons.

**ANSWER:**  Defendants admit that UpRight Law advertises and offers bankruptcy services as defined in 11 U.S.C. § 101(4A).  The remainder of Paragraph 140 is denied.

141.  Debtor did not receive the benefit of the advertised free consultation.

**ANSWER:**  Defendants deny Paragraph 141.

142. During Debtor's first call with UpRight Law, through its non-attorney Senior Client Consultant Mr. Arenstein, the decision was made for Debtor to pursue a chapter 7 bankruptcy filing without the Debtor speaking with a licensed attorney.

**ANSWER:**  Defendants deny Paragraph 142.

143.  Before Debtor spoke over the telephone with Mr. Homa, Debtor agreed upon the total amount of the attorney's fees to be paid to UpRight Law and to that end, made a payment on $50.00 to UpRight Law.

**ANSWER:**  Defendants admit Paragraph 143 as literally alleged, but deny Paragraph 143 to the extent it is intended to suggest that the agreement was not subject to modification after Mr. Homa spoke to the Debtor.

144. Debtor did not receive the benefit of the free consultation as advertised, promoted and promised by UpRight Law prior to verbally agreeing to pursue a chapter 7 bankruptcy filing utilizing the services of UpRight Law.

**ANSWER:**  Defendants deny Paragraph 144.

145.  Any express representation to the Debtor that she would receive a free consultation from UpRight Law was false and misleading, and UpRight Law knew of the falsity of such representation at the time it was made, given its history of failing to provide a free "legal consultation."

**ANSWER:** Defendants deny Paragraph 145.

**Count IV- Disgorgement of Fees Paid Pursuant to 11 U.S.C. § 329(b) and Rule 2017**

146.    All of the preceding Paragraphs of this Complaint are incorporated herein by reference.

**ANSWER:** Defendants incorporate their responses to preceding Paragraphs of the Complaint by reference.

147.  The Debtor entered into a written retainer agreement with UpRight Law and Mr. Homa under which UpRight Law and Mr. Homa agreed to represent the Debtor in her bankruptcy case. The Debtor paid UpRight Law and Mr. Homa together attorney's fees of $1,675.00.

**ANSWER:** Defendants admit Paragraph 147.

148.  Debtor was sued by at least one creditor and subjected to judgment and collection between the time she engaged UpRight Law and began making payments towards its attorney's fees and when her Bankruptcy Case was filed.  Debtor thereafter made payments totaling $125 to the judgment creditor, all while Debtor was making payments to UpRight Law.

**ANSWER:** Defendants admit Debtor was sued by a creditor and judgment was entered against the Ms. Potter. Defendants also admit that she paid $125 to a judgment creditor and that she also made payments to UpRight Law. But Defendants denies the remainder including but not limited to the timing of the payments.

149.  Debtor sought assistance to file a bankruptcy case and contacted Upright Law because she believed UpRight Law's advertisements that it would be able to help her in that regard. Debtor paid a total of $1,675.00 in attorney's fees to UpRight Law for bankruptcy assistance. Debtor then was forced to wait 402 days after UpRight Law began first providing bankruptcy assistance and almost seven months after having paid UpRight Law in full before UpRight Law finally commenced her Bankruptcy Case, during which time Debtor was sued by at least one creditor, agreed to a judgment on that debt, and then wasted her money-making payments on that judgment debt.

**ANSWER:**  Defendants admit that UpRight Law first began providing bankruptcy assistance on May 12, 2018; that the Debtor paid the firm $1,675 as an attorney fee for her Chapter 7 bankruptcy; and that 402 days elapsed between the date upon which UpRight Law first provided bankruptcy assistance and Ms. Potter's bankruptcy petition was filed.  Defendants lack knowledge sufficient to enable it to admit or deny allegations regarding Debtor's beliefs regarding UpRight Law's advertisements.  Defendants deny the remainder of Paragraph 149.

150.  Moreover, the total attorney fee Debtor paid to UpRight for legal representation in her bankruptcy case is substantially higher than the average fee charged by Local Attorneys who practice in this District when they are not associated with UpRight Law.

**ANSWER:**  Defendants deny Paragraph 150, and further state that Mr. Homa does not typically file cases in the Southern District of Illinois, either in his capacity as a partner of UpRight Law or otherwise.

151.  During the time between when Debtor initially retained UpRight Law and made payments to UpRight Law and when Mr. Homa finally contacted the Debtor more than a month after she was paid in full, the Debtor received little to no substantive legal assistance from UpRight Law lawyers. In fact, as many as seven calls from Debtor to UpRight were handled only by non- lawyer staff designated as an "UpRighter."  As such, the Debtor did not receive any real added value from UpRight Law's services that justifies and makes reasonable its higher fees.

**ANSWER:**  Defendants deny Paragraph 151.

152.  Even though this case was not filed in a rush, the information contained in the schedules was inaccurate. Specifically, Schedule A/B included assets that were no longer in Debtor's possession (tax refund) and Schedule E/F inflated Debtor's liabilities, thereby making Debtor's financial picture appear much worse that it truly was.

**ANSWER:**  Defendants admit that this case was not a "rush" case.  Defendants deny the

remainder of Paragraph 152.

153.   Debtor did not receive adequate personal attention when she may have realized that she could satisfy or settle her debts given the available cash assets of her tax refunds in the total amount of $7,900 and the attorney's fees and court filing fee paid to UpRight Law ($2,010). When she asked for a refund in February 2019 following receipt of her tax refunds, her initial email was ignored. Following her second email request, instead of being provided an in-person legal consultation, Debtor received only an email and voicemail from Mr. Homa, resulting in her abandoning her request for a refund.

**ANSWER:**  Defendants deny Paragraph 153.

154.   All compensation paid by the Debtor to UpRight Law for the basic bankruptcy services provided over the extensive number of months of its retention due to UpRight Law's own apparent disregard and lack of diligence is unreasonable and excessive. Accordingly, such fees must be disgorged back to the Debtor pursuant to 11 U.S.C. § 329 and Fed.R.Bankr.Proc. 2017.

**ANSWER:**  Defendants deny Paragraph 154.

155.   The retention of any fees by UpRight Law is unreasonable and unconscionable under the facts and circumstances of this Bankruptcy Case.

**ANSWER:**  Defendants deny Paragraph 155.

## II.   DEFENSES

Without assuming any burden of proof, the Complaint is subject to the additional legal defenses set forth below.  These additional defenses are asserted based on information currently available to them.  Defendants reserve the right to add any additional defenses that may become evident during the course of this litigation.

### Due Process – Excessive Penalty Sought

156. The Complaint violates Due Process because it purports to seek grossly excessive penalties.  For a flat fee of $1,675, Defendants obtained a discharge on behalf of the Debtor and have provided a host of additional services to the Debtor post-petition.  Nevertheless, the Complaint purports to seek $80,000 in civil penalties from the Defendants.  The demand seeks an excessive penalty that violates the Due Process clause of the Fifth Amendment.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 425 (2003) ("Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.").

## Due Process and Rule 65 – Unspecific injunction

157.     The Prayers for relief in Counts I – III purport to seek an injunction that would prohibit UpRight Law from "engaging in conduct that would violate Section 526(a)." Such requests for an "obey the law" injunction violate Fed. R. Civ. P. 65 and Due Process. *See, e.g., S.E.C. v. Sky Way Global, LLC*, 710 F. Supp.2d 1274, 1280 (M.D. Fla. 2010) (an "obey-the-law" injunction not only fails to provide a defendant with sufficient notice as to what it must do to obey the injunction, it also allows enforcement agencies to circumvent the defendant's Due Process rights by way of contempt proceedings, no matter how distinct the future violation may be); *In re Foster*, 586 B.R. 62, 86 (Bankr. W.D. Wash. 2018) ("The U.S. Trustee's request to enjoin Mr. Bellum and UpRight Law from all future violations of LRB 5005-1(d)(2) is impermissibly vague."); *In re Bishop*, 578 B.R. 158, 166 (Bankr. W.D.N.Y. 2017) (denying with prejudice the United States Trustee's claim for an "obey the law" injunction pursuant to § 526 sought against UpRight Law).

## First Amendment Violation

158.     The UST's requests for injunctive relief in Counts II and III are also defective because they infringe UpRight Law's First Amendment rights. Count II purports to prohibit UpRight Law from representing to Debtors that it is "efficient," that it is able to timely file a case, or that it will provide "immediate legal help." In Count III, the UST seeks to attempt to enjoin UpRight Law from representing "to Debtors that it will provide a free consultation."

159.     The injunctions sought in Counts II and III are designed to target certain aspects of UpRight Law's advertising. These advertisements constitute commercial speech. Commercial speech is entitled to protection under the First Amendment.

160.     Statements relating to "efficiency" are not alleged to be false in the Count II. The UST has no substantial interest in regulating such a statement.

161.     The statement relating to providing "immediate legal help" is not misleading. As the Complaint itself acknowledges, UpRight Law provided Ms. Potter with her May 16, 2018 call with Mr. Homa. The UST has no substantial interest in regulating such a statement, which was not misleading.

162.     The statement relating to a "free consultation" is also not misleading. Ms. Potter engaged the firm to represent for a flat attorney fee of $1,675. The UST cannot allege, let alone prove, that Ms. Potter was "charged" for any particular portion of the representation. The UST has no substantial interest in regulating such a statement, which was not false or misleading.

163.     Moreover, the injunctions are more extensive than necessary to advance any legitimate governmental interest. In that regard, the UST purports to seek an outright prohibition on UpRight Law's use of certain expressions, rather seeking clarifications of the terminology or underlying modifications to the firm's procedures. The relief sought by the UST, if awarded, would violate Defendants' First Amendment rights.

## Due Process – Lack of Neutral Arbiter

164.     One of the basic procedural requirements of an adversary proceeding is that it be presided over by a neutral factfinder. *See Fulton v. McVay,* 318 B.R. 546 (D. Colo. 2004). Yet, this adversary proceeding is pending before the same Bankruptcy Court that ordered the UST to conduct an investigation of UpRight Law.

165.     Moreover, the Bankruptcy Court purports to have made factual findings relating to the Potter bankruptcy despite the fact that there was no evidentiary hearing in the underlying Bankruptcy case. In that sense, the Bankruptcy Court has prejudged the merits of this case. The Bankruptcy Court cannot preside over this case without violating Defendants' due process right to a neutral factfinder.

## **Violation of Fed. R. Civ. 61 and Fed. R. Bankr. P. 9005**

166.     Rule 61, made applicable to this case under Federal Rule of Bankruptcy Procedure 9005, provides in relevant part, "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

167.     The Adversary Complaint makes no effort to explain how the errors alleged in Schedule E/F or A/B affected the substantial rights of any party. These alleged errors are not alleged to have caused harm to a "substantial right" of any party, the debtor, or the estate.

168.     The UST was fully aware of these alleged errors when the Chapter 7 Trustee issued his final report on March 18, 2020.  The UST made no objection, timely or otherwise, to the Final Report.  These facts confirm that these purported errors to did not harm the substantial right of any party.

169.      Pursuant to Rule 61 and Federal Rule of Bankruptcy Procedure, these alleged errors must be disregarded.  They cannot form a basis for liability.

## **Violation of Fed. R. Bankr. Proc. 1009**

170.     Bankruptcy Rule 1009(a) allows a debtor to amend her voluntary bankruptcy petition "as a matter of course at any time before the case is closed." Fed. R. Bank. Proc. 1009. Under the "permissive approach" endorsed by the Seventh Circuit, amendments may be made freely any time before a case is closed and denied only upon a clear and convincing showing of bad faith by the debtor or prejudice to the creditor.  *In re Yonikus*, 996 F.2d 866, 872 (7th Cir.1993).

171.     Valid amendments to petitions relate back so as to take effect as of the date when the original was filed.  *See In re IFC Credit Corp.,* 420 B.R. 471, 476 (Bankr. N.D. Ill. 2009) (*citing In re Bixby v. First National Bank of Elwood,* 250 F.2d 713, 716 (7th Cir.1957)).

172.     Debtor's counsel amended Schedule A/B to address the purported error – almost

three months before the Chapter 7 Trustee issued his Final Report on March 18, 2020.  The UST did not issue any objection, timely or otherwise.

173.      The UST has not alleged (and could not in good faith allege) that there was prejudice to any creditor.  Nor can the UST prove that Ms. Potter or her counsel acted in bad faith relating to the information contained in Schedule A/B.  Accordingly, the UST cannot deny the effect of the amendment to Schedule A/B.  The information previously contained in Schedule A/B cannot serve as a basis for liability under §526.

## Waiver/Estoppel/Ratification – §329 Claim

174.      The Chapter 7 Trustee handbook sets forth the procedure that governs the review of attorney compensation in Chapter 7 bankruptcy cases.   Under the procedures included in Chapter 7 Trustee handbook, the Chapter 7 Trustee is charged with reviewing the reasonableness of the attorney fee in the first instance.

> The trustee must review this disclosure of compensation and make an independent determination whether the fee paid or agreed to be paid is excessive. 11 U.S.C. §704(a) If the fee is excessive, the trustee must discuss with the United States Trustee the possibility of bringing the matter before the court for a review of fees pursuant to section 329(b) and Rule 2017(a). 28 U.S.C. § 586.

175.      The Chapter 7 Trustee did not make any determination that the attorney fee was excessive in this case.  He issued his final report on March 18, 2020.

176.      Pursuant to Fed. R. Bankr. Proc. 5009, the UST had 30 days to object to the final Chapter 7 Trustee's report.  If the UST had any issue with the attorney fee charged in this case, it was incumbent upon her to object timely to the report.  However, she made no such objection.

177.      These procedures exist to ensure a prompt and efficient determination of issues relating to the reasonableness of an attorney fee in a Chapter 7 case.  The UST's failure to timely object to the fee constitutes a waiver.   The UST's failure to object also constitutes the UST's

ratification of the fee, and the UST is estopped from asserting a §329.

## UST has unclean hands – §329 claim

178.　To the extent that the UST purports to seek disgorgement of the attorney fee based on relative comparisons to other practitioners in the Southern District of Illinois, she possesses unclean hands.

179.　No presumptive maximum reasonable fee has been set in the Southern District of Illinois for more than 20 years. Courts and commentators alike have remarked that the establishment of such fees can serve as a time-saving device for courts, practitioners, and trustees alike.

180.　After UpRight Law began receiving notices relating to its disclosures of compensation – that UpRight Law understood based on incomplete information somehow to pertain to the amount of fees it charged *relative* to other firms that practiced in the Southern District of Illinois – UpRight Law sought the establishment of a presumptive fee for Chapter 7 cases.

181.　The UST nevertheless successfully *opposed* the establishment of such a reasonable presumptive fee.

182.　As a result, there is no presumptive reasonable fee in the Southern District of Illinois.  To the extent that the UST challenges to UpRight Law's fees based on *relative* comparisons, by frustrating the UST has unclean hands.

## Equal Protection – Selective Prosecution

183.　The United States Trustee for Region 10 ("UST") is engaging in discriminatory enforcement against Defendants in numerous respects in violation of their equal protection rights.

184.     The UST has singled out UpRight Law and subjected it and its affiliated attorneys to differential treatment relative to other consumer bankruptcy law firms and consumer bankruptcy lawyers that file consumer bankruptcy petitions in U.S. District Court for the Southern District of Illinois.

185.     These other bankruptcy consumer bankruptcy firms and attorneys who file consumer bankruptcy petitions in the Southern District of Illinois are similarly situated to UpRight Law and there is no rational basis for the UST's differential treatment of UpRight Law or its affiliated attorneys.

**Laches**

186.     The UST delayed in asserting the claims in this case.

187.     The delay was not reasonable or excusable and was in fact affirmative misconduct against Defendants.

188.     The UST acquiesced in the acts about which the UST complains.

189.     Defendants have suffered prejudice resulting from the delay because Plaintiff's' inaction and silence led Defendants to continue retaining clients and filing petitions in the Southern District of Illinois and charging similar rates for a period of several years prior to any action by the UST.

190.     Even after the issue of attorney compensation was raised by the Bankruptcy Court, the UST took no action with respect to the amount of attorney fees charged for a period of approximately two years.

191.     According to the Department of Justice Handbook for Chapter 7 Trustees, ""The trustee must review this disclosure of compensation [filed by the debtor's attorney] and make an independent determination whether the fee paid or agreed to be paid is excessive. 11 U.S.C.

§704(a) If the fee is excessive, the trustee must discuss with the United States Trustee the possibility of bringing the matter before the court for a review of fees pursuant to section 329(b) and Rule 2017(a). 28 U.S.C. § 586."

192.     The Chapter 7 Trustee noted no objection to the fee in this case in his final report, and the UST did not file any objection to the final report, including the amount of the fees.

193.     On information and belief, the UST did not any object to any final report filed by any Chapter 7 Trustee in a case filed by UpRight Law relating to the amount of the fee for a period of several years before the Potter bankruptcy was filed.aw1qz2

194.     Laches is a defense that may be maintained against the UST in this case. See e.g. *United States v. Admin. Enterprises, Inc*., 46 F.3d 670, 673 (7th Cir. 1995).

195.     If the UST believed that the fees charged by UpRight Law were generally excessive for Chapter 7 cases, it was incumbent upon her to raise a formal objection earlier.  Moreover, the UST continued to be unclear about the amount of the attorney fee a Chapter 7 practitioner can charge for bankruptcies in the Southern District of Illinois in order to avoid scrutiny of the fee based on the amount charged to the detriment of Defendants.

### **Failure to state a claim upon which relief can be granted**

196.     Defendants incorporate by reference all of their arguments made pursuant to Fed. R. Civ. P. 12(b)(6) in their Motion to Dismiss.  (Doc. 10 and 10-1).

### **III.    JURY DEMAND**

Defendants demand a trial by jury on all issues that are triable by a jury.

DATED: January 19, 2021        Respectfully submitted,

/s/ *Mark T. Lavery*
Mark T. Lavery
Illinois Bar No 6271291
Attorney at Law
8926 N. Greenwood, #115
Niles, IL 60714
(312) 792-9533
laverylawyer@gmail.com


Charles A. Armgardt
Illinois Bar No 6328149
UpRight Law LLC
Of Counsel
79 W Monroe St, 5th Floor
Chicago, IL 60603
(P) (877) 927-5451
carmgardt@uprightlaw.com

*Counsel for Defendants Deighan Law LLC,
doing business as UpRight Law LLC
and Eric Homa*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 19, 2021, I filed the foregoing Defendants' Answer and Additional Defenses to the Amended Adversary Complaint of the United States Trustee through the Court's CM/ECF system, which will effect service upon all counsel registered to receive notice through that system.

Dated: January 19, 2021

*/s/ Mark T. Lavery*